IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

| | | |
|---|---|---|
| MARCELLUS MCKINLEY | * | |
| | * | |
| COUNTERCLAIM PLAINTIFF | * | |
| v. | * | Case No.: 8:23-cv-2069-AAQ |
| | * | |
| D.H. PORTER ENTERPRISES, LLC | * | |
| D/B/A STAFFING ETC. | * | |
| | * | |
| COUNTERCLAIM DEFENDANT | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FIRST AMENDED COUNTERCLAIM COMPLAINT
### AND DEMAND FOR JURY TRIAL

Counterclaim Plaintiff Marcellus McKinley ("Counterclaim Plaintiff"), by and through undersigned counsel, submits his First Amended Counterclaim Complaint and Demand for Jury Trial against Plaintiff / Counterclaim Defendant D.H. Porter Enterprises, LLC d/b/a Staffing Etc. ("DHP").  Through this pleading, Counterclaim Plaintiff seeks to recover earned and unlawfully withheld commission wages and damages against DHP under the Maryland Wage Payment Collection Law ("MWPCL"), and other relief and damages as set forth below.[1]

### PARTIES AND JURISDICTION

1.    Counterclaim Plaintiff is an adult resident and domiciliary of the Commonwealth of Virginia.

2.    DHP is a limited liability company, formed under the laws of the State of Maryland, with a principal office located within Prince George's County, Maryland.

---

[1] In a companion Third Party Complaint, Counterclaim Plaintiff seeks relief on all Counts alleged herein against Third-Party Defendants Staffing Plus Unlimited, Inc. a/k/a Staffing Plus, Inc., David Porter, and Hope Porter (collectively referred to herein as "the Third-Party Defendants"), jointly and severally with DHP.

3.      Each member of DHP is an adult resident and domiciliary of Prince George's County, Maryland.

4.      During the period relevant to this action, DHP held the power and authority to hire, fire, or otherwise administer employment-related discipline related against Counterclaim Plaintiff.

5.      During the period relevant to this action, DHP held the power and authority to set and/or alter or amend work duties and responsibilities for Counterclaim Plaintiff.

6.      During the period relevant to this action, DHP held the power and authority to set compensation plans and authorize compensation related decisions pertaining to Counterclaim Plaintiff.

7.      During the period relevant to this action, DHP and/or its ownership and/or management directed, supervised, and managed Counterclaim Plaintiff's work duties.

8.      During the period relevant to this action, DHP qualified as Counterclaim Plaintiff's employer.

9.      During the period relevant to this action, Counterclaim Plaintiff qualified as an employee, employed by DHP.

10.     In this action, Counterclaim Plaintiff claims damages against DHP exceeding $75,000.00, and complete diversity of citizenship exists between Counterclaim Plaintiff and DHP such that this Court properly confers diversity jurisdiction for the adjudication of Counterclaim Plaintiff's Counterclaims.

11.     In this action, Counterclaim Plaintiff seeks relief under one or more Federal statutes such that this Court properly confers Federal Question jurisdiction over

Counterclaim Plaintiff's Federal law relief sought and supplemental jurisdiction over Counterclaim Plaintiff's interrelated Maryland state law relief sought.

12. In consideration of the foregoing, venue, subject matter jurisdiction, and personal jurisdiction over Plaintiff's Counterclaim Complaint is proper in the United States District Court for the District of Maryland, Greenbelt Division.

## **FACTS**

13. Counterclaim Plaintiff was employed by DHP as its Director of Recruitment and Business Development during the period of about August 14, 2014, until the date DHP terminated Counterclaim Plaintiff's employment on or about June 24, 2022.

14. On or about February 23, 2020, DHP modified Counterclaim Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages calculated pursuant to a mutually agreed upon matrix and methodology.

15. Pursuant to mutually agreed upon material terms between DHP and Counterclaim Plaintiff, Counterclaim Plaintiff earned and was entitled to receipt of full and timely payment of commission wages arising from DHP's net profit from the PCG New Jersey Contact Tracer Contract ("the New Jersey Contract").

16. During the year 2020, the revenue generated by the New Jersey Contract amounted to $9,658,996, from which DHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 30% of DHP's net profit arising therefrom.

17. DHP's net profit realized from the New Jersey Contract for 2020 is calculated by multiplying the 305,085.2 hours of staffing worked by the $1.44 contract markup

to equal a net total profit of at least $439,323.00.  Of DHP's net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $131,797.00.

18.     From January 2021 to September 2021, the revenue generated by the New Jersey contract amounted to $38,220,865, from which DHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 30% of DHP's net profit arising therefrom.

19.     DHP's net profit realized from the New Jersey Contract for January 2021 to September 2021, is calculated by multiplying 1,207,229 hours of staffing worked by the $1.44 contract markup to equal a net profit of at least $1,748,410.  Of DHP's net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $521,523.00.

20.     From October 2021 until the conclusion of the contract in August 2022, the revenue generated by the New Jersey Contract amounted to $18,112,611, from which DHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 20% of DHP's net profit arising therefrom.

21.     DHP's net profit realized from the New Jersey Contract from October 2021, until the conclusion of the contract in August 2022, is calculated by multiplying 572,098 hours of staffing worked multiplied by the $1.44 contract markup to equal a net profit of at least $823,821.00.  Of this net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages in the amount of 20%, equal to at least $164,764.00.

22.   Counterclaim Plaintiff earned and was entitled to receive payment of total commission wages arising from DHP's net profit arising from the New Jersey Contract for the period 2020 through 2022, in the amount of at least $818,084.00, and likely more factoring in additional net profit earned by DHP arising from overtime charged to the contract.

23.   DHP paid Counterclaim Plaintiff commission wages in the total amount of $461,698.00 from the New Jersey Contract for the period 2020 through 2022.

24.   DHP unlawfully withheld and/or failed to fully and timely pay Counterclaim Plaintiff promised and earned commission wages from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

25.   DHP's withholding and/or failure to fully and timely pay Counterclaim Plaintiff promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00 constitutes a willful and knowing violation of DHP's wage payment obligations and Counterclaim Plaintiff's statutory rights under the MWPCL.

26.   The MWPCL provides that DHP's failure to fully and timely pay Counterclaim Plaintiff his promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, entitles Counterclaim Plaintiff to recovery of three times (3x) Counterclaim Plaintiff's promised and earned commission wages (at least $356,385.00 * 3 = $1,069,155.00), plus payment of Counterclaim Plaintiff's attorney's fees and costs.

27.   Pursuant to the Maryland Equal Pay for Equal Work Act ("the Maryland Equal Pay Act"), Labor & Employment Section 3-304.1(a), "An employer may not (1)

5

prohibit an employee from (i) inquiring about [or] discussing [] the wages of the
employee … or (3) take any adverse employment action against an employee for
(i) inquiring about the employee's wages …"

28. Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a),
"An employer may not … (4) discharge … an employee … because the employee
(i) makes a complaint to the employer [related to the employee's wages]."

29. In May 2022, and June 2022, Plaintiff made several pointed and urgent verbal and
written inquires and complaints to DHP regarding the past due balance of his
earned commission wages from the New Jersey Contract of the period 2020,
through 2022, and the calculation of the same to facilitate DHP's payment of the
same to Counterclaim Plaintiff.

30. The inquires and complaints Counterclaim Plaintiff made to DHP regarding his
commission wages in May 2022, and June 2022, qualified as a statutorily
protected activities under the Maryland Equal Pay Act.

31. DHP regarded Counterclaim Plaintiff's inquires and complaints regarding the
status, calculation, and delinquent payment of his earned commission wages in
May 2022, and June 2022, as irritating, insubordinate, and a direct threat to
DHP's authority over Counterclaim Plaintiff.

32. As a knowingly unlawful act of willful and malicious retaliation caused and
motivated by Counterclaim Plaintiff's statutorily protected inquires and
complaints to DHP regarding the status, calculation, and delinquent payment of
his earned commission wages in May 2022, and June 2022, on or about June 24,
2022, DHP terminated Counterclaim Plaintiff's employment, causing

Counterclaim Plaintiff to suffer lost back and future wages, lost future earning opportunities, and other and resulting economic and emotional damages.

33.     DHP's termination of Counterclaim Plaintiff's employment on or about June 24, 2022, resulted in the conclusion of Counterclaim Plaintiff's coverage and eligibility to participate in DHP's group health care plan insurance coverage.

34.     Upon DHP's termination of Counterclaim Plaintiff's employment, DHP was required, within fourteen (14) days of termination, to notify Counterclaim Plaintiff of his COBRA rights to continue DHP's group health care plan insurance coverage.  *See* 29 U.S.C. § 1166(a)(4).

35.     Notwithstanding DHP's statutory obligation, DHP failed to provide or otherwise issue Counterclaim Plaintiff his required COBRA notice and has not issued required COBRA notice as of the date of the filing of this Counterclaim Complaint.

36.     DHP's unlawful failure to timely issue Counterclaim Plaintiff his required COBRA notice constitutes a material violation of Federal law that has caused Counterclaim Plaintiff damages for which Counterclaim Plaintiff is entitled recovery of damages as set forth under the Employment Retirement Income Security Act of 1974 ("ERISA"); 29 U.S.C. § 1132(c).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF MWPCL

37.     Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

38.     As set forth above, upon DHP's termination of Counterclaim Plaintiff's employment, and continuing to date, DHP unlawfully withheld and/or failed to fully and timely pay Counterclaim Plaintiff promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

39.     DHP had and continue to have actual knowledge that Counterclaim Plaintiff was entitled to receipt of full and timely payment of earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

40.     DHP had and continue to have actual knowledge that DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00 is in direct violation of DHP's wage payment obligations and Counterclaim Plaintiff's wage payment rights under the MWPCL.

41.     DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, constitutes a willful and knowing violation of DHP's wage payment obligations and Counterclaim Plaintiff's statutory rights under the MWPCL.

42.     DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, was and

continues to be knowing, willful, intentional, and not the product of a *bona fide* dispute between Counterclaim Plaintiff and DHP.

WHEREFORE, Counterclaim Plaintiff requests this Court enter judgment in favor of Counterclaim Plaintiff and against DHP in the amount of at least $356,385.00, or such other amount as determined by a finder of fact, statutory liquidated damages equal to an additional two times (2x) the earned commission wages found to be unlawfully withheld and/or not timely or fully paid (a total recovery of 3x Counterclaim Plaintiff's earned commission wages due and owing), plus payment of Counterclaim Plaintiff's attorney's fees and costs.

## COUNT II
## BREACH OF CONTRACT

43.    Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

44.    In the alternative to Count I, should the Court find that the commissions Plaintiff claims do not constitute wages under the MWPCL, Counterclaim Plaintiff and DHP mutually agreed to material terms and conditions of a valid and binding contract under which Counterclaim Plaintiff held contractual rights to receive earned commissions and DHP held a contractual duty to pay Counterclaim Plaintiff commissions arising from the New Jersey Contract for the period 2020, through 2022.

45.    On February 23, 2020, in consideration of the continuation of Counterclaim Plaintiff's working relationship with DHP, Counterclaim Plaintiff and DHP mutually agreed to a modification and increase to Counterclaim Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages arising from DHP's net profit realized

from the New Jersey Contract, calculated pursuant to a mutually agreed upon matrix and methodology.

46.     Pursuant to material terms mutually agreed upon between DHP and Counterclaim Plaintiff, Counterclaim Plaintiff fully performed all requisite and/or required duties such that he earned and was entitled to payment of commissions arising from DHP realizing of net profit from the New Jersey Contract for the period 2020, through 2022.

47.     Pursuant to the material terms mutually agreed upon between DHP and Counterclaim Plaintiff, and the same detrimentally relied upon by Counterclaim Plaintiff, Counterclaim Plaintiff fully performed all requisite and/or required duties such that he earned and was entitled to payment of commissions arising from DHP realizing of net profit from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $818,084.00.

48.     DHP materially breached its contractual duty to pay Counterclaim Plaintiff earned commissions arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

49.     DHP's material breach of its contractual duty to pay Counterclaim Plaintiff earned commissions arising from the New Jersey Contract for the period 2020, through 2022, caused Counterclaim Plaintiff to suffer damages in the amount of at least $356,385.00.

WHEREFORE, Counterclaim Plaintiff prays he be awarded judgment against DHP for breach of contract in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT III
## QUANTUM MERUIT / UNJUST ENRICHMENT

50. Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

51. In the alternative to Count I and Count II, should it be determined that Counterclaim Plaintiff did not hold a right to recover commissions claimed in this action as wages under the MWPCL and a valid and binding contract did not exist between Counterclaim Plaintiff and DHP related to Plaintiff's rights to commissions arising from the New Jersey Contract for the period 2020, through 2022, Counterclaim Plaintiff performed valuable services for DHP under circumstances in which Counterclaim Plaintiff and DHP reasonably expected that DHP would pay Counterclaim Plaintiff a fair and equitable sum of earned commissions from DHP's net profit realized from the New Jersey Contract for the period 2020, through 2022.

52. It would be unfair and inequitable for DHP to receive the value of Counterclaim Plaintiff's valuable services related to the New Jersey Contract for the period 2020, through 2022, without paying Counterclaim Plaintiff full and reasonably expected compensation therefor.

53. DHP has been unjustly enriched by and through their failure to pay Counterclaim Plaintiff fair and reasonably expected commissions for Counterclaim Plaintiff's

valuable services rendered for DHP benefit related to the New Jersey Contract for the period 2020, through 2022.

WHEREFORE, Counterclaim Plaintiff prays he be awarded judgment as Quantum Meruit and Unjust Enrichment against DHP in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

<u>**COUNT IV**</u>
**PROMISSORY ESTOPPEL**

54.    Plaintiff Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

55.    On multiple occasions during the period 2020, through about June 2022, DHP made express and repeated written and oral representations to Counterclaim Plaintiff confirming Counterclaim Plaintiff would receive commissions calculated pursuant to a mutually agreed upon matrix and methodology arising from DHP's net profit from the New Jersey Contract for the period 2020, through 2022.

56.    On multiple occasions during the period 2020, through June 2022, DHP made express and repeated oral and written representations to Counterclaim Plaintiff confirming DHP would and intended to pay commissions to Counterclaim Plaintiff calculated pursuant to a mutually agreed upon matrix and methodology arising from DHP's net profit from the New Jersey Contract for the period 2020, through 2022.

57.    In making multiple express oral and written promises and representations to Counterclaim Plaintiff during the period 2020, through about June 2022, related to Counterclaim Plaintiff's right and entitlement to commissions arising from the

New Jersey Contract for the period 2020, through 2022, calculated at a mutually agreed upon matrix and methodology, DHP intended and reasonably expected Counterclaim Plaintiff to remain in DHP's employ and/or continue his ongoing working relationship with DHP and for Counterclaim Plaintiff to detrimentally rely on DHP's promises and representations to perform duties for DHP's benefit on or related to the New Jersey Contract during the period 2020, through 2022.

58.   In direct detrimental reliance upon DHP's multiple express oral and written promises and representations to Counterclaim Plaintiff during the period 2020, through about June 2022, related to Counterclaim Plaintiff's right and entitlement to commissions arising from the New Jersey Contract calculated at a mutually agreed upon matrix and methodology, and DHP's intent to pay the same, Counterclaim Plaintiff was enticed to and did forego pursuit and/or consideration of potential alternative employment opportunities, was enticed to and did remain in DHP's employ, and was enticed to and did perform duties for DHP's benefit related to the New Jersey Contract during the period 2020, through 2022.

59.   During the period 2020, through June 2022, DHP had actual knowledge and intent that, notwithstanding their multiple express oral and written promises to Counterclaim Plaintiff confirming his entitlement to and DHP's intent to pay Counterclaim Plaintiff commissions calculated pursuant to an agreed upon matrix and methodology arising from the net profit of the New Jersey Contract for 2020, through 2022, DHP had no intention to pay Counterclaim Plaintiff commissions arising from DHP's net profit on the New Jersey Contract in accordance with the

matrix and methodology Counterclaim Plaintiff and DHP mutually agreed to and that DHP expressly promised to pay Counterclaim Plaintiff.

60.     During the period 2020, through June 2022, the multiple and repeated express oral and written representations and promises DHP made to Counterclaim Plaintiff confirming DHP's intention to pay Counterclaim Plaintiff commissions arising from DHP's net profit on the New Jersey Contract for the period 2020, through June 2022, in accordance with the matrix and methodology Counterclaim Plaintiff and DHP mutually agreed to and that DHP expressly promised to Counterclaim Plaintiff were actually and/or constructively fraudulent and/or made in bad faith by DHP at the time DHP communicated the same to Counterclaim Plaintiff.

61.     During the period 2020, through about June 2022, Defendants had actual knowledge that Counterclaim Plaintiff detrimentally relied upon DHP's multiple false and/or fraudulent express oral and written promises and representations to Counterclaim Plaintiff conforming and/or promising Counterclaim Plaintiff's right and entitlement to commissions arising from the New Jersey Contract for the period 2020, through June 2022, calculated in accordance with the matrix and methodology Counterclaim Plaintiff and DHP mutually agreed to and that DHP expressly promised to Counterclaim Plaintiff.

62.     In detrimental reliance upon DHP's multiple false and/or fraudulent express oral and written promises to Counterclaim Plaintiff regarding Counterclaim Plaintiff's entitlement to commissions arising from DHP's net profit on the New Jersey Contract for 2020, through June 2022, and the calculation of the same pursuant to a promised and mutually agreed to methodology and matrix, DHP realized net

14

profit from the New Jersey Contract for the period 2020 through June 2022, in the amount of at least $818,084.00, and further increased their profit arising from the New Jersey Contract for the period 2020, through June 2022, by withholding and failing and/or refusing to pay Counterclaim Plaintiff earned and promised commissions in the amount of at least $356,385.00.

63.     DHP has caused Counterclaim Plaintiff to suffer monetary losses a direct and proximate result of DHP's false and/or fraudulent promises to pay Counterclaim Plaintiff promised and earned commissions in the amount of at least $356,385.00.

WHEREFORE, Counterclaim Plaintiff prays that he be awarded judgment under Counterclaim Plaintiff's Promissory Estoppel Count against DHP in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT V
## VIOLATION OF MARYLAND EQUAL PAY ACT – WRONGFUL TERMINATION

64.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

65.     Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-304.1(a), "An employer may not (1) prohibit an employee from (i) inquiring about [or] discussing [] the wages of the employee … or (3) take any adverse employment action against an employee for (i) inquiring about the employee's wages …"

66.     Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a), "An employer may not … (4) discharge … an employee … because the employee (i) makes a complaint to the employer [related to the employee's wages]."

67.     Prior to Counterclaim Plaintiff's date of termination, in May 2022, and June 2022, Plaintiff made several verbal and written inquires and complaints to DHP regarding the past due amount of his earned commission wages that remained due and owing and the proper and mutually agreed upon calculation of the same to facilitate DHP's payment of the same.

68.     The inquires and complaints Counterclaim Plaintiff made to DHP regarding his commission wages qualified as a statutorily protected activity under the Maryland Equal Pay Act.

69.     Notwithstanding that Counterclaim Plaintiff's inquires and complaints to DHP in May 2022, and June 2022, regarding the status, calculation, and requested payment of his earned commission qualified as statutorily protected acts under the Maryland Equal Pay Act, DHP regarded the same as irritating, insubordinate, and a direct threat to DHP's authority over Counterclaim Plaintiff.

70.     On or about June 24, 2022, as a knowingly unlawful act of willful and malicious retaliation caused and motivated by Counterclaim Plaintiff presenting statutorily protected inquires and complaints to DHP in May 2022, and June 2022, regarding the status, calculation, and requested payment of his earned commission wages, DHP terminated Counterclaim Plaintiff's employment.

71.     DHP's termination of Counterclaim Plaintiff's employment on or about June 24, 2022, was unlawful insofar it constituted a direct violation of Counterclaim

Plaintiff's anti-retaliation protections expressly set forth in the Maryland Equal Pay Act.

72. As a direct result of DHP's unlawful termination of Counterclaim Plaintiff's employment, Counterclaim Plaintiff has suffered lost back and future wages, lost future earning opportunities, and other resulting economic and emotional damages.

WHEREFORE, Counterclaim Plaintiff prays he be awarded judgment under Counterclaim Plaintiff's Maryland Equal Pay Act Wrongful Termination Count against DHP in the amount of $500,000.00, or such other amount as is proven at trial, statutorily provided liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs and expenses of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT VI
## UNLAWFUL FAILURE TO PROVIDE COBRA NOTICE

73. Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

74. During the period of Counterclaim Plaintiff's employment, DHP offered and provided Counterclaim Plaintiff with health care coverage by and through DHP's ERISA-qualifying group health care plan.

75. On or about June 24, 2022, DHP terminated Counterclaim Plaintiff's employment, resulting in the termination of Counterclaim Plaintiff's participation and/or eligibility to participate in DHP's group health care plan coverage by and through DHP's ERISA-qualifying group health care plan.

76.     Following DHP's termination of Plaintiff's employment, Counterclaim Plaintiff made multiple requests to DHP for issuance of his COBRA notice and/or related documents with information pertaining to his rights to continue his health insurance coverage.

77.     Upon DHP's termination of Plaintiff's employment, DHP were required, within fourteen (14) days of termination, to notify Counterclaim Plaintiff of his COBRA rights to continue his health insurance coverage.

78.     Notwithstanding Counterclaim Plaintiff's requests for the same and DHP's statutory obligation, DHP failed to provide or otherwise issue Counterclaim Plaintiff required timely COBRA notice.

79.     As of the date of Counterclaim Plaintiff's filing of this Counterclaim Complaint, DHP has continued to fail and/or refuse to provide or otherwise issue Counterclaim Plaintiff his required COBRA notice.

80.     DHP's failure to provide Counterclaim Plaintiff with timely COBRA notice, directly and proximately caused Counterclaim Plaintiff to suffer economic and related and/or resulting emotional damages.

81.     DHP's unlawful failure to provide or otherwise issue Counterclaim Plaintiff his required COBRA was perpetrated by DHP willfully and with actual knowledge of illegality.

WHEREFORE, Counterclaim Plaintiff requests this Court enter judgment in favor of Counterclaim Plaintiff and against DHP in the amount of $110.00 per day that DHP have and continue to unlawfully withhold and/or fail to provide Counterclaim Plaintiff with his required COBRA notice or such other amount as determined by a finder of fact, additional compensatory

and related emotional damages in an amount as determined by a finder of fact, plus payment of Counterclaim Plaintiff's attorney's fees and costs.

## COUNT VII
### VIOLATION OF 26 U.S.C § 7434

82.     Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

83.     For each year during the period of Counterclaim Plaintiff's employ, DHP filed or issued and/or caused one or more 1099 IRS Tax Information Returns to be filed or issued to Counterclaim Plaintiff.

84.     At all times relevant, the 1099 IRS Tax Information Form was a Tax Information Forms filed or issued related to payments made for income or revenue not related to and/or arising from an employment relationship.

85.     Prior to and during Counterclaim Plaintiff's employment relationship with DHP, DHP perpetrated a scheme whereby DHP misclassified Counterclaim Plaintiff and other individuals employed by DHP as non-employees and, in so doing, paid Counterclaim Plaintiff and other individuals employed by DHP compensation without tax deductions and withholdings and filing and issuing each 1099 IRS Tax Information Forms 1099s, shifting the burden of payment of payroll and related tax obligations to Counterclaim Plaintiff and DHP's other employees and saving DHP substantial overhead costs to present contract bids below competitors and increase revenue and profits for the benefit of DHP.

86.     Arising from the foregoing scheme, during the period relevant to this action, DHP willfully and intentionally filed or issued and/or caused multiple 1099 IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff when DHP had

actual knowledge doing so was false, fraudulent, and unlawful, and that DHP

should have filed or issued and/or caused an IRS Tax Information Form W-2 to be

filed or issued to Counterclaim Plaintiff for each calendar year Counterclaim

Plaintiff was employed by DHP.

87.     Further, for the calendar year 2022, DHP caused or directed SP to file and issue

Counterclaim Plaintiff two (2) IRS Tax Information Forms, the first an IRS Tax

Information Form 1099-MISC, identifying SP as issuing payment of "Rents" to

Counterclaim Plaintiff in the amount of One Hundred Eighty-Seven Thousand

Four Hundred Ninety-Six Dollars and Zero Cents ($187,496.00), and the second

an IRS Tax Information Form 1099-NEC, identifying SP as issuing payment of

"Nonemployee compensation" to Counterclaim Plaintiff in the amount of One

Hundred Eighty-Seven Thousand Four Hundred Ninety-Six Dollars and Zero

Cents ($187,496.00).

88.     Both 2022 IRS Tax Information Forms DHP caused or directed SP to file and

issue to Counterclaim Plaintiff are facially incorrect and have no relationship to

Counterclaim Plaintiff's gross wages earned while employed by DHP during the

2022 calendar year, insofar as all income earned by Counterclaim Plaintiff from

DHP in the 2022 calendar year was in the form of wages earned in the context of

an employee/employer relationship and no compensation and/or other income

earned by Counterclaim Plaintiff from DHP was in the form of "Rents" or

"Nonemployee compensation."

89.     26 U.S.C. § 7434 provides that "[i]f any person willfully files a fraudulent

information return with respect to payments purported to be made to any other

person, such other person may bring a civil action for damages against the person so filing such return."

90.    To state a claim for relief under 26 U.S.C. § 7434, Counterclaim Plaintiff must allege facts to prove (1) that DHP issued or filed an information return; (2) that the information return was fraudulent; and (3) that DHP willfully issued a fraudulent information return.

91.    Counterclaim Plaintiff satisfies the first element of this claim because DHP filed or issued or caused and/or directed SP to file or issue one or more 1099 IRS Tax Information Forms to Counterclaim Plaintiff each year while Counterclaim Plaintiff was in DHP's employ.

92.    Filing or issuing an IRS 1099 Tax Information Form constitutes issuing an information return.

93.    As to the second and third elements, DHP had actual knowledge and knew that it misrepresented and misreported Counterclaim Plaintiff's wages and/or employment earnings on the 1099 IRS Tax Information Form(s) DHP filed or issued and/or caused to be filed or issued to Counterclaim Plaintiff each calendar year of his employment.

94.    Further, because DHP had actual knowledge that Counterclaim Plaintiff was an employee and that DHP were required to pay its employer share of tax withholdings and wished to avoid the costs associated with this obligations and acted to misclassify Counterclaim Plaintiff as a non-employee and misidentify Counterclaim Plaintiff's wages as "Rents" or "Nonemployee compensation" as part of a cost-saving scheme to fraudulently and unlawfully realize additional

profits and gain an unfair competitive advantage, DHP had actual knowledge that it should have and was required to report Counterclaim Plaintiff's compensation received as a part of his employee/employer relationship with DHP as "wages" earned in the context of an employee/employer relationship for each calendar year on IRS Tax Information Form W2s.

95.    At all times relevant to this action, DHP had actual knowledge that filing or issuing and/or causing the filing or issuing of 1099 IRS Tax Information Forms to or for Counterclaim Plaintiff was false, fraudulent, and unlawful and that classifying and/or representing the employment wages DHP paid to Counterclaim Plaintiff as "Rents" or "Nonemployee compensation" was untruthful and had no relationship to the wages DHP paid to Counterclaim Plaintiff in the context of their ongoing employee/employer relationship.

96.    In each tax year during the period of Counterclaim Plaintiff's employment, DHP knowingly and intentionally filed or issued and/or caused or directed incorrect IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff.

97.    Arising from each tax year during the period of Counterclaim Plaintiff's employment, DHP should have issued Counterclaim Plaintiff a correct IRS Form W-2 tax form with the correct wages noted and calculated and the correct withholdings noted, calculated, and withheld.

98.    At all times relevant, DHP had actual knowledge that a W-2 tax form with the correct wages and withholdings noted, calculated, and withheld was the correct tax form for Counterclaim Plaintiff that DHP should have filed or issued and/or caused to be filed or issued to Counterclaim Plaintiff and not 1099 tax forms

materially misrepresenting the context and/or source of the income earned by Counterclaim Plaintiff and/or paid by DHP to Counterclaim Plaintiff.

99.     DHP acted willfully and fraudulently to purposely file or issue and/or cause or direct incorrect IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff in each tax year during his employment with DHP.

100.    DHP acted willfully to issue incorrect IRS Tax Information Form to Counterclaim Plaintiff so (1) to avoid paying the employer share of FICA and related employer tax withholdings and shifting this burden to Counterclaim Plaintiff and (2) to reduce overhead and gain an unfair competitive advantage against industry competitors that otherwise adhered to their employer related tax obligations.

WHEREFORE, DHP is liable to Counterclaim Plaintiff in the amount of the greater of his actual damages arising from DHP's statutory violation or statutory damages amount of $5,000.00 for each fraudulent information return, plus reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## JURY DEMAND

Counterclaim Plaintiff requests a trial by jury on all facts, issues, and/or disputes so triable.

Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

  */s/ Gregg C. Greenberg*
Gregg C. Greenberg, Bar No. 17291
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Counterclaim Plaintiff*