IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

MARCELLUS MCKINLEY   ———— *
  ———— *
   COUNTERCLAIM PLAINTIFF   ———— *
~~v.~~   *
v.   *   Case No.: 8:23-cv-2069-AAQ
  *

D.H. PORTER ENTERPRISES, LLC   ———— *
D/B/A STAFFING ETC.   ———— *
  *
~~And~~   *   ~~Case No.: 8:23-cv-02069-AAQ~~
  *
~~STAFFING PLUS UNLIMITED, INC.~~   *
~~A/K/A STAFFING PLUS, INC.~~
~~9410 Annapolis Road, Suite 210~~   *
~~Lanham, Maryland 20706~~   *
  *
~~SERVE:  HOPE PORTER~~   *
~~9410 Annapolis Road, Suite 210~~   *
~~Lanham, Marland 20706~~   *
  *
~~And~~   *
  *
~~DAVID PORTER~~   *
~~17013 Birch Leaf Terrace~~   *
~~Bowie, Maryland 20716~~   *
  *
~~And~~   *
  *
~~HOPE PORTER~~   *
~~17013 Birch Leaf Terrace~~   *
~~Bowie, Maryland 20716~~   *
  *
   COUNTERCLAIM ~~DEFENDANTS.~~   *DEFENDANT   *

*********************************************************************************

**FIRST AMENDED COUNTERCLAIM COMPLAINT
AND DEMAND FOR JURY TRIAL**

Counterclaim Plaintiff Marcellus McKinley ("Counterclaim Plaintiff"), by and through undersigned counsel, submits his First Amended Counterclaim Complaint and Demand for Jury Trial against Plaintiff / Counterclaim ~~Defendants~~Defendant D.H. Porter Enterprises, LLC d/b/a Staffing Etc. ("DHP~~"), Staffing Plus Unlimited, Inc. a/k/a Staffing Plus, Inc. ("SP"), David Porter, individually ("D. Porter"), and Hope Porter, individually ("H. Porter") (together, "Counterclaim Defendants").  In~~").  Through this ~~action~~pleading, Counterclaim Plaintiff seeks to recover ~~back~~earned and unlawfully withheld commission wages and damages against ~~Defendants, jointly and severally,~~DHP under the Maryland Wage Payment Collection Law ("MWPCL"), and ~~for~~ other relief and damages as set forth below.[1]

## PARTIES AND JURISDICTION

1.     Counterclaim Plaintiff is an adult resident and domiciliary of the Commonwealth of Virginia.

2.     DHP is a limited liability company, formed under the laws of the State of Maryland, with a principal office located within Prince George's County, Maryland.

~~3.     SP is a corporation, formed under the laws~~ Each member ~~of the State of Maryland, with a principal office located within Prince George's County, Maryland.~~

~~4.~~3.     ~~D. Porter~~DHP is an adult resident and domiciliary of Prince George's County, Maryland.

---

[1] In a companion Third Party Complaint, Counterclaim Plaintiff seeks relief on all Counts alleged herein against Third-Party Defendants Staffing Plus Unlimited, Inc. a/k/a Staffing Plus, Inc., David Porter, and Hope Porter (collectively referred to herein as "the Third-Party Defendants"), jointly and severally with DHP.

5. ~~H. Porter is an adult resident and domiciliary of Prince George's County, Maryland.~~

6. ~~DHP and SP operate in concert under the common ownership of D. Porter and H. Porter under the trade name Staffing Etc. in furtherance of their joint and business operation of proving healthcare workers and administrative staff to private hospitals, government agencies, school systems, correctional institutions, and health centers.~~

7. ~~D. Porter is an adult resident and domiciliary of the State of Maryland.~~

8. ~~H. Porter is an adult resident and domiciliary of the State of Maryland.~~

9. During the period relevant to this action, ~~D. Porter and H. Porter each held controlling officer and/or member positions for DHP and SP.~~

10. ~~During the period relevant to this action, D. Porter and H. Porter each held substantial ownership and/or financial interests in DHP and SP.~~

11. ~~During the period relevant to this action, D. Porter and H. Porter oversaw and controlled the management, administration, and business operations of DHP and SP.~~

12. ~~During the period relevant to this action, D. Porter and H. Porter acted as the most senior managers and supervisors for all DHP and SP employees, including Counterclaim Plaintiff.~~

~~13.~~4. ~~During the period relevant to this action, D. Porter and H. Porter each~~DHP held the power and authority to hire, fire, or otherwise administer employment-related discipline related ~~to all DHP and SP employees, including~~against Counterclaim Plaintiff.

~~14.~~5.    During the period relevant to this action, ~~D. Porter and H. Porter each~~DHP held the power and authority to set and/or alter or amend work duties and responsibilities for ~~all DHP and SP employees, including~~ Counterclaim Plaintiff.

~~15.~~6.    During the period relevant to this action, ~~D. Porter and H. Porter each~~ DHP held the power and authority to set ~~and/or alter or amend~~ compensation plans and~~/or related~~ authorize compensation related decisions ~~for all DHP and SP employees, including~~ pertaining to Counterclaim Plaintiff.

~~16.~~7.    During the period relevant to this action, ~~D. Porter and H. Porter each acted on behalf of~~ DHP and ~~SP to keep/or its ownership~~ and/or ~~maintain employment-related records for all DHP~~management directed, supervised, and ~~SP employees, including~~managed Counterclaim ~~Plaintiff~~Plaintiff's work duties.

~~17.~~    ~~During the period relevant to this action, D. Porter and H. Porter each substantially participated in decisions on behalf of DHP and SP to withhold Counterclaim Plaintiff's earned commissions wages giving rise to Counterclaim Plaintiff's MWPCL Count and related relief in this action.~~

~~18.~~    ~~During the period relevant to this action, D. Porter and H. Porter, each acted on behalf of DHP and SP to direct, supervise, and manage Counterclaim Plaintiff's work performed by for the benefit of DHP and SP.~~

~~19.~~    ~~During the period relevant to this action, D. Porter and H. Porter, each authorized and directed the use and/or utilization of money, materials, assets, supplies, and labor commonly owned or controlled by DHP and SP for the DHP and SP's interchangeable and/or joint use and/or benefit.~~

20.    During the period relevant to this action, D. Porter and H. Porter, each owned and operated DHP and SP for the joint purpose of procuring, funding, and servicing staffing contracts held by and/or for the benefit of DHP and SP.

21.    During the period relevant to this action, D. Porter and H. Porter, administered, managed, and supervised DHP and SP employees, including Counterclaim Plaintiff, in their performance of common, interchangeable, and overlapping job duties related to, or in furtherance of, procuring, funding, and servicing staffing contracts held by and/or for the benefit of DHP and SP.

22.    During the period relevant to this action, D. Porter and H. Porter directed and instructed DHP and SP employees, including Counterclaim Plaintiff, to perform common, interchangeable, and overlapping job duties for the common benefit of DHP and SP during the same days and/or weeks, and often at the same time.

23.    During the period relevant to this action, D. Porter and H. Porter directed and instructed DHP and SP employees, including Counterclaim Plaintiff, to perform common, interchangeable, and overlapping job duties for the common benefit of DHP and SP from the same business address in Lanham, Maryland.

24.    During the period relevant to this action, all Counterclaim Defendants shared a common accountant/bookkeeper and similar administrative and bookkeeping tools to make general business and/or operational decisions for the common benefit of all Counterclaim Defendants.

25.    During the period relevant to this action, D. Porter and H. Porter controlled, managed, supervised, and directed the essential terms and conditions of Counterclaim Plaintiff's employment.

26.     ~~During the relevant period, the contracts confirming the terms and conditions of Counterclaim Plaintiff's job duties and compensation were executed between DHP and Counterclaim Plaintiff.~~

27.     ~~During the period relevant to this action, more than one IRS Tax Information Returns issued to Counterclaim Plaintiff, identifying compensation paid to Counterclaim Plaintiff received for performing work duties for the benefit of all Counterclaim Defendants was issued by, or on behalf of, SP.~~

~~28.~~8.     ~~During the period relevant to this action, Counterclaim Defendants, individually and collectively, quailed~~DHP qualified as Counterclaim Plaintiff's employer, ~~joint employers, and/or single enterprise employer~~.

~~29.~~9.     During the period relevant to this action, Counterclaim Plaintiff qualified as an employee, employed by ~~Counterclaim Defendants, individually and collectively~~DHP.

~~30.~~10.   In this action, ~~the damages claimed by~~ Counterclaim Plaintiff <u>claims damages</u> against ~~Counterclaim Defendant exceed~~<u>DHP exceeding</u> $75,000.00, and complete diversity of citizenship exists between Counterclaim Plaintiff and ~~each Counterclaim Defendant~~<u>DHP</u> such that this Court properly confers diversity jurisdiction for the adjudication of Counterclaim Plaintiff's Counterclaims.

~~31.~~11.   In this action, Counterclaim Plaintiff seeks relief under one or more Federal statutes such that this Court properly confers Federal Question jurisdiction over Counterclaim Plaintiff's Federal law relief sought and supplemental jurisdiction over Counterclaim Plaintiff's interrelated Maryland state law relief sought.

32.12.  In consideration of the foregoing, venue, subject matter jurisdiction, and personal jurisdiction for Counterclaimover Plaintiff's Counterclaim Complaint in this action is proper in the United States District Court for the District of Maryland, Greenbelt Division.

## FACTS

33.13.  Counterclaim Plaintiff was employed by Counterclaim Defendants under the title of DHP'sDHP as its Director of Recruitment and Business Development during the period of about August 14, 2014, throughuntil the date Counterclaim DefendantsDHP terminated Counterclaim Plaintiff's employment on or about June 24, 2022.

34.14.  On or about February 23, 2020, Counterclaim DefendantsDHP modified Counterclaim Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages calculated pursuant to a mutually agreed upon matrix and methodology.

35.15.  Pursuant to mutually agreed upon material terms between Counterclaim DefendantsDHP and Counterclaim Plaintiff, Counterclaim Plaintiff earned and was entitled to receipt of full and timely payment of commission wages arising from Counterclaim Defendants'DHP's net profit from the PCG New Jersey Contact Tracer Contract ("the New Jersey Contract").

36.16.  During the year 2020, the revenue generated by the New Jersey Contract amounted to $9,658,996, from which Counterclaim Defendants wereDHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 30% of Counterclaim Defendants'DHP's net profit arising therefrom.

37.17.  ~~Counterclaim Defendants'~~DHP's net profit realized from the New Jersey Contract for 2020 is calculated by multiplying the 305,085.2 hours of staffing worked by the $1.44 contract markup to equal a net total profit of at least $439,323.00.  ~~Of Counterclaim Defendants'~~Of DHP's net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $131,797.00.

38.18.  From January 2021 to September 2021, the revenue generated by the New Jersey contract amounted to $38,220,865, from which ~~Counterclaim Defendants were~~DHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 30% of ~~Counterclaim Defendants'~~DHP's net profit arising therefrom.

39.19.  ~~Counterclaim Defendants'~~DHP's net profit realized from the New Jersey Contract for January 2021 to September 2021, is calculated by multiplying 1,207,229 hours of staffing worked by the $1.44 contract markup to equal a net profit of at least $1,748,410.  ~~Of Counterclaim Defendants'~~Of DHP's net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $521,523.00.

40.20.  From October 2021 until the conclusion of the contract in August 2022, the revenue generated by the New Jersey Contract amounted to $18,112,611, from which ~~Counterclaim Defendants were~~DHP was required to pay Counterclaim Plaintiff earned commission wages in the amount of 20% of ~~Counterclaim Defendants'~~DHP's net profit arising therefrom.

41.21.  ~~Counterclaim Defendants'~~DHP's net profit realized from the New Jersey Contract from October 2021, until the conclusion of the contract in August 2022, is calculated by multiplying 572,098 hours of staffing worked multiplied by the $1.44 contract markup to equal a net profit of at least $823,821.00.  Of this net profit amount, Counterclaim Plaintiff was entitled to payment of earned commission wages in the amount of 20%, equal to at least $164,764.00.

42.22.  Counterclaim Plaintiff earned and was entitled to receive payment of total commission wages arising from ~~Counterclaim Defendants'~~DHP's net profit arising from the New Jersey Contract for the period 2020 through 2022, in the amount of at least $818,084.00, and likely more factoring in additional net profit earned by ~~Counterclaim Defendants~~DHP arising from overtime charged to the contract.

43.23.  ~~Counterclaim Defendants~~DHP paid Counterclaim Plaintiff commission wages in the total amount of $461,698.00 from the New Jersey Contract for the period 2020 through 2022.

44.24.  ~~Counterclaim Defendants~~DHP unlawfully withheld and/or failed to fully and timely pay Counterclaim Plaintiff promised and earned commission wages from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

45.25.  ~~Counterclaim Defendants'~~DHP's withholding and/or failure to fully and timely pay Counterclaim Plaintiff promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00 constitutes a willful and knowing violation of ~~Counterclaim~~

~~Defendants'~~DHP's wage payment obligations and Counterclaim Plaintiff's statutory rights under the MWPCL.

~~46.~~26.  The MWPCL provides that ~~Counterclaim Defendants'~~DHP's failure to fully and timely pay Counterclaim Plaintiff his promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, entitles Counterclaim Plaintiff to recovery of three times (3x) Counterclaim Plaintiff's promised and earned commission wages (at least $356,385.00 * 3 = $1,069,155.00), plus payment of Counterclaim Plaintiff's attorney's fees and costs.

~~47.~~27.  Pursuant to the Maryland Equal Pay for Equal Work Act ("the Maryland Equal Pay Act"), Labor & Employment Section 3-304.1(a), "An employer may not (1) prohibit an employee from (i) inquiring about [or] discussing [] the wages of the employee … or (3) take any adverse employment action against an employee for (i) inquiring about the employee's wages …"

~~48.~~28.  Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a), "An employer may not … (4) discharge … an employee … because the employee (i) makes a complaint to the employer [related to the employee's wages]."

~~49.~~29.  In May 2022, and June 2022, Plaintiff made several pointed and urgent verbal and written inquires and complaints to ~~Counterclaim Defendants~~DHP regarding the past due balance of his earned commission wages from the New Jersey Contract of the period 2020, through 2022, and the calculation of the same to facilitate ~~Counterclaim Defendants'~~DHP's payment of the same to Counterclaim Plaintiff.

50.30.   The inquires and complaints Counterclaim Plaintiff made to Counterclaim Defendants DHP regarding his commission wages in May 2022, and June 2022, qualified as a statutorily protected activities under the Maryland Equal Pay Act.

51.31.   Counterclaim Defendants DHP regarded Counterclaim Plaintiff's inquires and complaints regarding the status, calculation, and delinquent payment of his earned commission wages in May 2022, and June 2022, as irritating, insubordinate, and a direct threat to Counterclaim Defendants' DHP's authority over Counterclaim Plaintiff.

52.32.   As a knowingly unlawful act of willful and malicious retaliation caused and motivated by Counterclaim Plaintiff's statutorily protected inquires and complaints to Counterclaim Defendants DHP regarding the status, calculation, and delinquent payment of his earned commission wages in May 2022, and June 2022, on or about June 24, 2022, Counterclaim Defendants DHP terminated Counterclaim Plaintiff's employment, causing Counterclaim Plaintiff to suffer lost back and future wages, lost future earning opportunities, and other and resulting economic and emotional damages.

53.33.   Counterclaim Defendants' DHP's termination of Counterclaim Plaintiff's employment on or about June 24, 2022, resulted in the conclusion of Counterclaim Plaintiff's coverage and eligibility to participate in Counterclaim Defendants' DHP-provided DHP's group health care plan insurance coverage.

54.34.   Upon Counterclaim Defendants' DHP's termination of Counterclaim Plaintiff's employment, Counterclaim Defendants were DHP was required, within fourteen (14) days of termination, to notify Counterclaim Plaintiff of his COBRA rights to

continue ~~Counterclaim Defendants' DHP-provided~~DHP's group health care plan insurance coverage.  *See* 29 U.S.C. § 1166(a)(4).

~~55.~~35.  Notwithstanding ~~Counterclaim Defendants'~~DHP's statutory obligation, ~~Counterclaim Defendants~~DHP failed to provide or otherwise issue Counterclaim Plaintiff his required COBRA notice and has not issued required COBRA notice as of the date of the filing of this Counterclaim Complaint.

~~56.~~36.  ~~Counterclaim Defendants'~~DHP's unlawful failure to timely issue Counterclaim Plaintiff his required COBRA notice constitutes a material violation of Federal law that has caused Counterclaim Plaintiff damages for which Counterclaim Plaintiff is entitled recovery of damages as set forth under the Employment Retirement Income Security Act of 1974 ("ERISA"); 29 U.S.C. § 1132(c).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF MWPCL

~~57.~~37.  Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

~~58.~~38.  As set forth above, upon ~~Counterclaim Defendants'~~DHP's termination of Counterclaim Plaintiff's employment, and continuing to date, ~~Counterclaim Defendants~~DHP unlawfully withheld and/or failed to fully and timely pay Counterclaim Plaintiff promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

~~59.~~39.  ~~Counterclaim Defendants~~DHP had and continue to have actual knowledge that Counterclaim Plaintiff was entitled to receipt of full and timely payment of earned

12

commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

60.40.   ~~Counterclaim Defendants~~DHP had and continue to have actual knowledge that ~~Counterclaim Defendants'~~DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00 is in direct violation of ~~Counterclaim Defendants'~~DHP's wage payment obligations and Counterclaim Plaintiff's wage payment rights under the MWPCL.

61.41.   ~~Counterclaim Defendants'~~DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, constitutes a willful and knowing violation of ~~Counterclaim Defendants'~~DHP's wage payment obligations and Counterclaim Plaintiff's statutory rights under the MWPCL.

62.42.   ~~Counterclaim Defendants'~~DHP's withholding and/or failure to fully and/or timely pay Counterclaim Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, was and continues to be knowing, willful, intentional, and not the product of a *bona fide* dispute between Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP.

WHEREFORE, Counterclaim Plaintiff requests this Court enter judgment in favor of Counterclaim Plaintiff and against ~~Counterclaim Defendants, jointly and severally,~~DHP in the amount of at least $356,385.00, or such other amount as determined by a finder of fact, statutory

liquidated damages equal to an additional two times (2x) the earned commission wages found to be unlawfully withheld and/or not timely or fully paid (a total recovery of 3x Counterclaim Plaintiff's earned commission wages due and owing), plus payment of Counterclaim Plaintiff's attorney's fees and costs.

**COUNT II**
**BREACH OF CONTRACT**

63.43.  Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

64.44.  In the alternative to Count I, should the Court find that the commissions Plaintiff claims do not constitute wages under the MWPCL, Counterclaim Plaintiff and Counterclaim DefendantsDHP mutually agreed to material terms and conditions of a valid and binding contract under which Counterclaim Plaintiff held contractual rights to receive earned commissions and Counterclaim DefendantsDHP held a contractual duty to pay Counterclaim Plaintiff commissions arising from the New Jersey Contract for the period 2020, through 2022.

65.45.  On February 23, 2020, in consideration of the continuation of Counterclaim Plaintiff's working relationship with Counterclaim DefendantsDHP, Counterclaim Plaintiff and Counterclaim DefendantsDHP mutually agreed to a modification and increase to Counterclaim Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages arising from Counterclaim Defendants'DHP's net profit realized from the New Jersey Contract, calculated pursuant to a mutually agreed upon matrix and methodology.

14

66.46.  Pursuant to material terms mutually agreed upon between ~~Counterclaim Defendants~~DHP and Counterclaim Plaintiff, Counterclaim Plaintiff fully performed all requisite and/or required duties such that he earned and was entitled to payment of commissions arising from ~~Counterclaim Defendants~~DHP realizing of net profit from the New Jersey Contract for the period 2020, through 2022.

67.47.  Pursuant to the material terms mutually agreed upon between ~~Counterclaim Defendants~~DHP and Counterclaim Plaintiff, and the same detrimentally relied upon by Counterclaim Plaintiff, Counterclaim Plaintiff fully performed all requisite and/or required duties such that he earned and was entitled to payment of commissions arising from ~~Counterclaim Defendants~~DHP realizing of net profit from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $818,084.00.

68.48.  ~~Counterclaim Defendants~~DHP materially breached ~~their~~its contractual duty to pay Counterclaim Plaintiff earned commissions arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

69.49.  ~~Counterclaim Defendants'~~DHP's material breach of ~~their~~its contractual duty to pay Counterclaim Plaintiff earned commissions arising from the New Jersey Contract for the period 2020, through 2022, caused Counterclaim Plaintiff to suffer damages in the amount of at least $356,385.00.

WHEREFORE, Counterclaim Plaintiff prays ~~that~~ he be awarded judgment against ~~Defendants, jointly and severally,~~DHP for breach of contract in the amount of at least

$356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT III**
**QUANTUM MERUIT / UNJUST ENRICHMENT**

~~70.~~50.  Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

~~71.~~51.  In the alternative to Count I and Count II, should it be determined that Counterclaim Plaintiff did not hold a right to recover commissions claimed in this action as wages under the MWPCL and a valid and binding contract did not exist between Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP related to Plaintiff's rights to commissions arising from the New Jersey Contract for the period 2020, through 2022, Counterclaim Plaintiff performed valuable services for ~~Counterclaim Defendants~~DHP under circumstances in which Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP reasonably expected that ~~Counterclaim Defendants~~DHP would pay Counterclaim Plaintiff a fair and equitable sum of earned commissions from ~~Counterclaim Defendants'~~DHP's net profit realized from the New Jersey Contract for the period 2020, through 2022.

~~72.~~52.  It would be unfair and inequitable for ~~Counterclaim Defendants~~DHP to receive the value of Counterclaim Plaintiff's valuable services related to the New Jersey Contract for the period 2020, through 2022, without paying Counterclaim Plaintiff full and reasonably expected compensation therefor.

~~73.~~53.  ~~Counterclaim Defendants have~~DHP has been unjustly enriched by and through their failure to pay Counterclaim Plaintiff fair and reasonably expected

commissions for Counterclaim Plaintiff's valuable services rendered for ~~Counterclaim Defendants'~~ DHP benefit related to the New Jersey Contract for the period 2020, through 2022.

WHEREFORE, Counterclaim Plaintiff prays ~~that~~ he be awarded judgment as Quantum Meruit and Unjust Enrichment against ~~Counterclaim Defendants, jointly and severally,~~ DHP in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

<u>**COUNT IV**</u>
**PROMISSORY ESTOPPEL**

~~74.~~54.  ~~Plaintiff~~ Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

~~75.~~55.  On multiple occasions during the period 2020, through about June 2022, ~~Counterclaim Defendants~~DHP made express and repeated written and oral representations to Counterclaim Plaintiff confirming ~~that~~ Counterclaim Plaintiff would receive commissions calculated pursuant to a mutually agreed upon matrix and methodology arising from ~~Counterclaim Defendant's~~DHP's net profit ~~realized~~ from the New Jersey Contract for the period 2020, through 2022.

~~76.~~56.  On multiple occasions during the period 2020, through June 2022, ~~Counterclaim Defendants~~DHP made express and repeated oral and written representations to Counterclaim Plaintiff confirming ~~Counterclaim Defendants~~DHP would and intended to pay commissions to Counterclaim Plaintiff calculated pursuant to a mutually agreed upon matrix and methodology arising from ~~Counterclaim~~

~~Defendant's~~DHP's net profit ~~realized~~ from the New Jersey Contract for the period 2020, through 2022.

~~77.~~57.  In making multiple express oral and written promises and representations to Counterclaim Plaintiff during the period 2020, through about June 2022, related to Counterclaim Plaintiff's right and entitlement to commissions arising from the New Jersey Contract for the period 2020, through 2022, calculated at a mutually agreed upon matrix and methodology, ~~Counterclaim Defendants~~DHP intended and reasonably expected Counterclaim Plaintiff to remain in ~~Counterclaim Defendants'~~DHP's employ and/or continue his ongoing working relationship with ~~Counterclaim Defendants~~DHP and for Counterclaim Plaintiff to detrimentally rely on ~~Counterclaim Defendants'~~DHP's promises and representations to perform duties for ~~Counterclaim Defendants'~~DHP's benefit on or related to the New Jersey Contract during the period 2020, through 2022.

~~78.~~58.  In direct detrimental reliance upon ~~Counterclaim Defendants'~~DHP's multiple express oral and written promises and representations to Counterclaim Plaintiff during the period 2020, through about June 2022, related to Counterclaim Plaintiff's right and entitlement to commissions arising from the New Jersey Contract calculated at a mutually agreed upon matrix and methodology, and ~~Counterclaim Defendants'~~DHP's intent to pay the same, Counterclaim Plaintiff was enticed to and did~~, in fact,~~ forego pursuit and/or consideration of ~~pursuit of~~ potential alternative employment opportunities, was enticed to and did~~, in fact,~~ remain in ~~Counterclaim Defendants'~~DHP's employ, and was enticed to and did~~,~~

~~in fact,~~ perform duties for ~~Counterclaim Defendants'~~DHP's benefit ~~on or~~ related to the New Jersey Contract during the period 2020, through 2022.

~~79.~~59.   During the period 2020, through June 2022, ~~Counterclaim Defendants~~DHP had actual knowledge and intent that, notwithstanding their multiple express oral and written promises to Counterclaim Plaintiff confirming his entitlement to and ~~Counterclaim Defendants'~~DHP's intent to pay Counterclaim Plaintiff commissions calculated pursuant to an agreed upon matrix and methodology arising from the net profit of the New Jersey Contract for 2020, through 2022, ~~Counterclaim Defendants~~DHP had no intention to pay Counterclaim Plaintiff commissions arising from ~~Counterclaim Defendants'~~DHP's net profit on the New Jersey Contract in accordance with the matrix and methodology Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP mutually agreed to and that ~~Counterclaim Defendants~~DHP expressly promised to pay Counterclaim Plaintiff.

~~80.~~60.   During the period 2020, through June 2022, the multiple and repeated express oral and written representations and promises ~~Counterclaim Defendants~~DHP made to Counterclaim Plaintiff confirming ~~Counterclaim Defendants'~~DHP's intention to pay Counterclaim Plaintiff commissions arising from ~~Counterclaim Defendants'~~DHP's net profit on the New Jersey Contract for the period 2020, through June 2022, in accordance with the matrix and methodology Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP mutually agreed to and that ~~Counterclaim Defendants~~DHP expressly promised to Counterclaim Plaintiff were actually and/or constructively fraudulent and/or made in bad faith by

~~Counterclaim Defendants time Counterclaim Defendants~~DHP at the time DHP communicated the same to Counterclaim Plaintiff.

~~81.~~61.   During the period 2020, through about June 2022, Defendants had actual knowledge that Counterclaim Plaintiff detrimentally relied upon ~~Counterclaim Defendants'~~DHP's multiple false and/or fraudulent express oral and written promises and representations to Counterclaim Plaintiff conforming and/or promising Counterclaim Plaintiff's right and entitlement to commissions arising from the New Jersey Contract for the period 2020, through June 2022, calculated in accordance with the matrix and methodology Counterclaim Plaintiff and ~~Counterclaim Defendants~~DHP mutually agreed to and that ~~Counterclaim Defendants~~DHP expressly promised to Counterclaim Plaintiff.

~~82.~~62.   In detrimental reliance upon ~~Counterclaim Defendants'~~DHP's multiple false and/or fraudulent express oral and written promises to Counterclaim Plaintiff regarding Counterclaim Plaintiff's entitlement to commissions arising from ~~Defendants'~~DHP's net profit on the New Jersey Contract for 2020, through June 2022, and the calculation of the same pursuant to a promised and mutually agreed to methodology and matrix, ~~Counterclaim Defendants~~DHP realized net profit from the New Jersey Contract for the period 2020 through June 2022, in the amount of at least $818,084.00, and further increased their profit arising from the New Jersey Contract for the period 2020, through June 2022, by withholding and failing and/or refusing to pay Counterclaim Plaintiff earned and promised commissions in the amount of at least $356,385.00.

83.63.   Counterclaim Defendants haveDHP has caused Counterclaim Plaintiff to suffer
monetary losses a direct and proximate result of Counterclaim Defendants'DHP's
false and/or fraudulent promises to pay Counterclaim Plaintiff promised and
earned commissions in the amount of at least $356,385.00.

WHEREFORE, Counterclaim Plaintiff prays that he be awarded judgment under
Counterclaim Plaintiff's Promissory Estoppel Count against Counterclaim Defendants, jointly
and severally,DHP in the amount of at least $356,385.00, or such other amount as is proven at
trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and
further relief this Court or a jury deems appropriate.

### COUNT V
### VIOLATION OF MARYLAND EQUAL PAY ACT – WRONGFUL TERMINATION

84.64.   Plaintiff incorporates by reference all preceding paragraphs as if the same were
repeated here verbatim.

85.65.   Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-
304.1(a), "An employer may not (1) prohibit an employee from (i) inquiring about
[or] discussing [] the wages of the employee … or (3) take any adverse
employment action against an employee for (i) inquiring about the employee's
wages …"

86.66.   Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a),
"An employer may not … (4) discharge … an employee … because the employee
(i) makes a complaint to the employer [related to the employee's wages]."

87.67.   Prior to Counterclaim Plaintiff's date of termination, in May 2022, and June 2022,
Plaintiff made several verbal and written inquires and complaints to Counterclaim

~~Defendants~~DHP regarding the past due amount of his earned commission wages that remained due and owing and the proper and mutually agreed upon calculation of the same to facilitate ~~Counterclaim Defendants'~~DHP's payment of the same.

~~88.~~68.  The inquires and complaints Counterclaim Plaintiff made to ~~Counterclaim Defendants~~DHP regarding his commission wages qualified as a statutorily protected activity under the Maryland Equal Pay Act.

~~89.~~69.  Notwithstanding that Counterclaim Plaintiff's inquires and complaints to ~~Counterclaim Defendants~~DHP in May 2022, and June 2022, regarding the status, calculation, and requested payment of his earned commission qualified as statutorily protected acts under the Maryland Equal Pay Act, ~~Counterclaim Defendants~~DHP regarded the same as irritating, insubordinate, and a direct threat to ~~Counterclaim Defendants'~~DHP's authority over Counterclaim Plaintiff.

~~90.~~70.  On or about June 24, 2022, as a knowingly unlawful act of willful and malicious retaliation caused and motivated by Counterclaim Plaintiff presenting statutorily protected inquires and complaints to ~~Counterclaim Defendants~~DHP in May 2022, and June 2022, regarding the status, calculation, and requested payment of his earned commission wages, ~~Counterclaim Defendants~~DHP terminated Counterclaim Plaintiff's employment.

~~91.~~71.  ~~Counterclaim Defendants'~~DHP's termination of Counterclaim Plaintiff's employment on or about June 24, 2022, was unlawful insofar it constituted a direct violation of Counterclaim Plaintiff's anti-retaliation protections expressly set forth in the Maryland Equal Pay Act.

92.72.  As a direct result of ~~Counterclaim Defendants'~~DHP's unlawful termination of Counterclaim Plaintiff's employment, Counterclaim Plaintiff has suffered lost back and future wages, lost future earning opportunities, and other resulting economic and emotional damages.

WHEREFORE, Counterclaim Plaintiff prays ~~that~~ he be awarded judgment under Counterclaim Plaintiff's Maryland Equal Pay Act Wrongful Termination Count against ~~Counterclaim Defendants, jointly and severally,~~DHP in the amount of $500,000.00, or such other amount as is proven at trial, statutorily provided liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs and expenses of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT VI
## UNLAWFUL FAILURE TO PROVIDE COBRA NOTICE

93.73.  Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

94.74.  During the period of Counterclaim Plaintiff's employment, ~~Counterclaim Defendants~~DHP offered and provided Counterclaim Plaintiff with health care coverage by and through DHP's ERISA-qualifying group health care plan.

95.75.  On or about June 24, 2022, ~~Counterclaim Defendants~~DHP terminated Counterclaim Plaintiff's employment, resulting in the termination of Counterclaim Plaintiff's participation and/or eligibility to participate in ~~Counterclaim Defendants'~~DHP's group health care plan coverage by and through DHP's ERISA-qualifying group health care plan.

96.76.  Following ~~Counterclaim Defendants'~~DHP's termination of Plaintiff's employment, Counterclaim Plaintiff made multiple requests to ~~Counterclaim Defendants~~DHP for issuance of his COBRA notice and/or related documents with information pertaining to his rights to continue his health insurance coverage.

97.77.  Upon ~~Counterclaim Defendants'~~DHP's termination of Plaintiff's employment, ~~Counterclaim Defendants~~DHP were required, within fourteen (14) days of termination, to notify Counterclaim Plaintiff of his COBRA rights to continue his health insurance coverage.

98.78.  Notwithstanding Counterclaim Plaintiff's requests for the same and ~~Counterclaim Defendants'~~DHP's statutory obligation, ~~Counterclaim Defendants~~DHP failed to provide or otherwise issue Counterclaim Plaintiff required timely COBRA notice.

99.79.  As of the date of Counterclaim Plaintiff's filing of this Counterclaim Complaint, ~~Counterclaim Defendants have~~DHP has continued to fail and/or refuse to provide or otherwise issue Counterclaim Plaintiff his required COBRA notice.

100.80.~~Counterclaim Defendants'~~DHP's failure to provide Counterclaim Plaintiff with timely COBRA notice, directly and proximately caused Counterclaim Plaintiff to suffer economic and related and/or resulting emotional damages.

101.81.~~Counterclaim Defendants'~~DHP's unlawful failure to provide or otherwise issue Counterclaim Plaintiff his required COBRA was perpetrated by ~~Counterclaim Defendants~~DHP willfully and with actual knowledge of illegality.

WHEREFORE, Counterclaim Plaintiff requests this Court enter judgment in favor of Counterclaim Plaintiff and against ~~Counterclaim Defendants, jointly and severally,~~DHP in the amount of $110.00 per day that ~~Counterclaim Defendants~~DHP have and continue to unlawfully

withhold and/or fail to provide Counterclaim Plaintiff with his required COBRA notice or such other amount as determined by a finder of fact, additional compensatory and related emotional damages in an amount as determined by a finder of fact, plus payment of Counterclaim Plaintiff's attorney's fees and costs.

## COUNT VII
## VIOLATION OF 26 U.S.C § 7434

102.82.102.   Counterclaim Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

103.83.103.   For each year during the period of Counterclaim Plaintiff's employ, Counterclaim Defendant DHP filed or issued Counterclaim Plaintiffand/or caused one or more 1099 IRS Tax Information Returns to be filed or issued to Counterclaim Plaintiff.

104.84.104.   At all times relevant, the 1099 IRS Tax Information Form arewas a Tax Information Forms usedfiled or issuesissued related to payments made for income or revenue not related to and/or arising from an employment relationship.

105.85.105.   Prior to and during Counterclaim Plaintiff's employment relationship with Defendants, Defendants conspired to perpetrateDHP, DHP perpetrated a scheme whereby Counterclaim Defendants would misclassifyDHP misclassified Counterclaim Plaintiff and other individuals employed by DefendantsDHP as non-employees and, in so doing, issuepaid Counterclaim Plaintiff and other individuals employed by Counterclaim DefendantsDHP compensation without tax deductions and withholdings and filing and issuing each 1099 IRS Tax Information Forms 1099s, shifting the burden of payment of payroll and related

25

tax obligations to Counterclaim Plaintiff and ~~Defendants'~~DHP's other employees and saving ~~Counterclaim Defendants~~DHP substantial overhead costs to present contract bids below competitors and increase revenue and profits for the benefit of ~~Defendants~~DHP.

~~106.~~86.~~106.~~   Arising from the foregoing scheme, during the period relevant to this action, ~~Counterclaim Defendants~~DHP willfully and intentionally filed or issued ~~Counterclaim Plaintiff~~ and/or caused multiple 1099 IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff when ~~Counterclaim Defendants~~DHP had actual knowledge doing so was false, fraudulent, and unlawful, and that ~~Counterclaim Defendants~~DHP should have filed or issued ~~Plaintiff~~and/or caused an IRS Tax Information Form W-2 to be filed or issued to Counterclaim Plaintiff for each calendar year Counterclaim Plaintiff was employed by ~~Counterclaim Defendants~~DHP.

~~107.~~87.~~107.~~   Further, for the calendar year 2022, ~~Counterclaim Defendant~~DHP caused or directed SP ~~issued~~to file and issue Counterclaim Plaintiff two (2) IRS Tax Information Forms, the first an IRS Tax Information Form 1099-MISC, identifying ~~Counterclaim Defendant~~ SP as issuing payment of "Rents" to Counterclaim Plaintiff in the amount of One Hundred Eighty-Seven Thousand Four Hundred Ninety-Six Dollars and Zero Cents ($187,496.00), and the second an IRS Tax Information Form 1099-NEC, identifying ~~Counterclaim Defendant~~ SP as issuing payment of "Nonemployee compensation" to Counterclaim Plaintiff in the amount of One Hundred Eighty-Seven Thousand Four Hundred Ninety-Six Dollars and Zero Cents ($187,496.00).

108.88.108.    Both 2022 IRS Tax Information Forms issued by Counterclaim Defendant DHP caused or directed SP to file and issue to Counterclaim Plaintiff are facially incorrect and have no relationship to Counterclaim Plaintiff's gross wages earned while employed by Counterclaim Defendants DHP during the 2022 calendar year, insofar as all income earned by Counterclaim Plaintiff from Counterclaim Defendants DHP in the 2022 calendar year was in the form of wages earned in the context of an employee/employer relationship and no compensation and/or other income earned by Counterclaim Plaintiff from Counterclaim Defendants DHP was in the form of "Rents" or "Nonemployee compensation."

109.89.109.    26 U.S.C. § 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

110.90.110.    To state a claim for relief under 26 U.S.C. § 7434, Counterclaim Plaintiff must allege facts to prove (1) that Counterclaim Defendants DHP issued or filed an information return; (2) that the information return was fraudulent; and (3) that Counterclaim Defendants DHP willfully issued a fraudulent information return.

111.91.111.    Counterclaim Plaintiff satisfies the first element of this claim because Counterclaim Defendants DHP filed or issued Counterclaim Plaintiff or caused and/or directed SP to file or issue one or more 1099 IRS Tax Information Forms to Counterclaim Plaintiff each year while Counterclaim Plaintiff was in Counterclaim Defendants' DHP's employ.

112.92.112.   IssuingFiling or issuing an IRS 1099 Tax Information Form constitutes issuing an information return.

113.93.113.   As to the second and third elements, Counterclaim DefendantsDHP had actual knowledge and knew that Counterclaim Defendantsit misrepresented and misreported Counterclaim Plaintiff's wages and/or employment earnings on the 1099 IRS Tax Information Form(s) Counterclaim DefendantsDHP filed or issued and/or caused to be filed or issued to Counterclaim Plaintiff each calendar year of his employment.

114.94.114.   Further, because Counterclaim DefendantsDHP had actual knowledge that Counterclaim Plaintiff was an employee and that Counterclaim DefendantsDHP were required to pay theirits employer share of tax withholdings and wished to avoid the costs associated with this obligations and conspiredacted to misclassify Counterclaim Plaintiff as a non-employee and misidentify Counterclaim Plaintiff's wages as "Rents" or "Nonemployee compensation" as part of a cost-saving scheme to fraudulently and unlawfully realize additional profits and gain an unfair competitive advantage, Counterclaim DefendantsDHP had actual knowledge that it should have and was required to report Counterclaim Plaintiff's compensation received as aparta part of his employee/employer relationship with Counterclaim DefendantsDHP as "wages" earned in the context of an employee/employer relationship for each calendar year on IRS Tax Information Form W2s.

115.95.115.   At all times relevant to this action, Counterclaim DefendantsDHP had actual knowledge that filing or issuing Counterclaim Plaintiff and/or causing the

28

filing or issuing of 1099 IRS Tax Information Forms to or for Counterclaim Plaintiff was false, fraudulent, and unlawful and that classifying and/or representing the employment wages Counterclaim DefendantsDHP paid to Counterclaim Plaintiff as "Rents" or "Nonemployee compensation" was untruthful and had no relationship to the wages Counterclaim Defendants issuedDHP paid to Counterclaim Plaintiff in the context of their ongoing employee/employer relationship.

116.96.116.   In each tax year during the period of Counterclaim Plaintiff's employment, Counterclaim DefendantsDHP knowingly and intentionally filed or issued Counterclaim Plaintiffand/or caused or directed incorrect IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff.

117.97.117.   Arising from each tax year during the period of Counterclaim Plaintiff's employment, Counterclaim DefendantsDHP should have issued Counterclaim Plaintiff a correct IRS Form W-2 tax form with the correct wages noted and calculated and the correct withholdings noted, calculated, and withheld.

118.98.118.   At all times relevant to this action, Counterclaim Defendants, DHP had actual knowledge that an IRS Forma W-2 tax form with the correct wages noted and calculated and the correct and withholdings noted, calculated, and withheld was the legally required correct tax form for Counterclaim Plaintiff and that Counterclaim DefendantsDHP should have filed or issued and/or caused to be filed or issued to Counterclaim Plaintiff this tax document and not 1099 IRS Tax Information Formstax forms materially misrepresenting the context and/or source

of the income earned by Counterclaim Plaintiff and/or paid by ~~Counterclaim Defendants~~DHP to Counterclaim Plaintiff.

~~119.~~99.~~119.~~   ~~Counterclaim Defendants~~DHP acted willfully and fraudulently to purposely file or issue and/or cause or direct incorrect IRS Tax Information Forms to be filed or issued to Counterclaim Plaintiff in each tax year during his employment with ~~Counterclaim Defendants~~DHP.

~~120.~~100.   ~~120.~~   ~~Counterclaim Defendants~~DHP acted willfully to issue incorrect IRS Tax Information Form to Counterclaim Plaintiff so (1) to avoid paying the employer share of FICA and related employer tax withholdings and shifting this burden to Counterclaim Plaintiff and (2) to reduce overhead and gain an unfair competitive advantage against industry competitors that otherwise adhered to their employer related tax obligations.

WHEREFORE, ~~Counterclaim Defendants are~~DHP is liable~~, jointly and severally~~, to Counterclaim Plaintiff in the amount of the greater of his actual damages arising from ~~Counterclaim Defendants'~~DHP's statutory violation or statutory damages amount of $5,000.00 for each fraudulent information return, plus reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## <u>JURY DEMAND</u>

Counterclaim Plaintiff requests a trial by jury on all facts, issues, and/or disputes so triable.

Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

   */s/ Gregg C. Greenberg*
Gregg C. Greenberg, Bar No. 17291
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Counterclaim Plaintiff*