IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

| | |
|---|---|
| MARCELLUS MCKINLEY | * |
| | * |
| PLAINTIFF | * |
| v. | * |
| | * |
| STAFFING PLUS UNLIMITED, INC. | * |
| A/K/A STAFFING PLUS, INC. | * |
| | * |
| And | * |
| | * |
| DAVID PORTER | * |
| | * |
| And | * |
| | * |
| HOPE PORTER | * |
| | * |
| THIRD-PARTY DEFENDANTS. | * |

*************************************************************************

## THIRD PARTY COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Marcellus McKinley ("Plaintiff"), by and through undersigned counsel, submits his Third-Party Complaint and Demand for Jury Trial against Staffing Plus Unlimited, Inc. a/k/a Staffing Plus, Inc. ("SP"), David Porter, individually ("D. Porter"), and Hope Porter, individually ("H. Porter") (together, "the Third-Party Defendants"). Through this pleading, Plaintiff seeks to recover earned and unlawfully withheld commission wages and damages against the Third-Party Defendants under the Maryland Wage Payment Collection Law ("MWPCL"), and other relief and damages as set forth below.[1]

---

[1] In a companion Counterclaim Complaint, Plaintiff seeks relief on all Counts alleged herein against Counterclaim Defendant D.H. Porter Enterprises, LLC d/b/a Staffing Etc. (hereafter, "DHP"), jointly and severally with the herein identified Third-Party Defendants.

## PARTIES AND JURISDICTION

1.      Plaintiff is an adult resident and domiciliary of the Commonwealth of Virginia.

2.      DHP is a limited liability company, formed under the laws of the State of Maryland, with a principal office located within Prince George's County, Maryland.

3.      SP is a corporation, formed under the laws of the State of Maryland, with a principal office located within Prince George's County, Maryland.

4.      D. Porter is an adult resident and domiciliary of Prince George's County, Maryland.

5.      H. Porter is an adult resident and domiciliary of Prince George's County, Maryland.

6.      DHP and SP operate in concert under the common ownership of D. Porter and H. Porter under the trade name Staffing Etc. in furtherance of their joint and business operation of proving healthcare workers and administrative staff to private hospitals, government agencies, school systems, correctional institutions, and health centers.

7.      During the period relevant to this action, D. Porter and H. Porter each held controlling officer and/or member positions for DHP and SP.

8.      During the period relevant to this action, D. Porter and H. Porter each held substantial ownership and/or financial interests in DHP and SP.

9.      During the period relevant to this action, D. Porter and H. Porter oversaw and controlled the management, administration, and business operations of DHP and SP.

10.    During the period relevant to this action, D. Porter and H. Porter acted as the most senior managers and supervisors for all DHP and SP employees, including Plaintiff.

11.    During the period relevant to this action, D. Porter and H. Porter each held the power and authority to hire, fire, or otherwise administer employment-related discipline related to all DHP and SP employees, including Plaintiff.

12.    During the period relevant to this action, D. Porter and H. Porter each held the power and authority to set and/or alter or amend work duties and responsibilities for all DHP and SP employees, including Plaintiff.

13.    During the period relevant to this action, D. Porter and H. Porter each held the power and authority to set and/or authorize compensation plans and/or related compensation decisions for all DHP and SP employees, including Plaintiff.

14.    During the period relevant to this action, D. Porter and H. Porter each acted on behalf of DHP and SP to keep and/or maintain employment-related records for all DHP and SP employees, including Plaintiff.

15.    During the period relevant to this action, D. Porter and H. Porter each substantially participated in decisions on behalf of DHP and SP to withhold Plaintiff's earned commissions wages giving rise to Plaintiff's MWPCL Count and related relief in this action.

16.    During the period relevant to this action, D. Porter and H. Porter, each acted on behalf of DHP and SP to direct, supervise, and manage Plaintiff's work performed by for the benefit of DHP and SP.

17.     During the period relevant to this action, D. Porter and H. Porter, each authorized and directed the use and/or utilization of money, materials, assets, supplies, and labor commonly owned or controlled by DHP and SP for the DHP and SP's interchangeable and/or joint use and/or benefit.

18.     During the period relevant to this action, D. Porter and H. Porter, each owned and operated DHP and SP for the joint purpose of procuring, funding, and servicing staffing contracts held by and/or for the benefit of DHP and SP.

19.     During the period relevant to this action, D. Porter and H. Porter, administered, managed, and supervised DHP and SP employees, including Plaintiff, in their performance of common, interchangeable, and overlapping job duties related to, or in furtherance of, procuring, funding, and servicing staffing contracts held by and/or for the benefit of DHP and SP.

20.     During the period relevant to this action, D. Porter and H. Porter directed and instructed DHP and SP employees, including Plaintiff, to perform common, interchangeable, and overlapping job duties for the common benefit of DHP and SP during the same days and/or weeks, and often at the same time.

21.     During the period relevant to this action, D. Porter and H. Porter directed and instructed DHP and SP employees, including Plaintiff, to perform common, interchangeable, and overlapping job duties for the common benefit of DHP and SP from the same business address in Lanham, Maryland.

22.     During the period relevant to this action, DHP and all Third-Party Defendants shared a common accountant/bookkeeper and similar administrative and bookkeeping tools to make general business and/or operational decisions for the common benefit of DHP and all Third-Party Defendants.

23.     During the period relevant to this action, D. Porter and H. Porter controlled, managed, supervised, and directed the essential terms and conditions of Plaintiff's employment.

24.     During the period relevant to this action, more than one IRS Tax Information Returns issued to Plaintiff, identifying compensation paid to Plaintiff received for performing work duties for the benefit of DHP and all Third-Party Defendants was issued by, or on behalf of, SP.

25.     During the period relevant to this action, DHP and each of the Third-Party Defendants, individually and collectively, quailed as Plaintiff's employer, joint employers, and/or single enterprise employer.

26.     During the period relevant to this action, Plaintiff qualified as an employee employed by DHP and each of the Third-Party Defendants, individually and collectively.

27.     The damages Plaintiff claims in this Third-Party Complaint against the Third-Party Defendants exceeds $75,000.00, and complete diversity of citizenship exists between Plaintiff and each Third-Party Defendant such that this Court properly confers diversity jurisdiction for the adjudication of Plaintiff's Counts alleged against the Third-Party Defendants in this Third-Party Complaint.

28.     In this action, Plaintiff seeks relief under one or more Federal statutes such that this Court properly confers Federal Question jurisdiction over Plaintiff's Federal law relief sought and supplemental jurisdiction over Plaintiff's interrelated Maryland state law relief sought.

29.     In consideration of the foregoing, venue, subject matter jurisdiction, and personal jurisdiction for Plaintiff's Third-Party Complaint in this action is proper in the United States District Court for the District of Maryland, Greenbelt Division.

**FACTS**

30.     Plaintiff was employed by DHP and the Third-Party Defendants as Director of Recruitment and Business Development during the period of about August 14, 2014, until the date DHP and the Third-Party Defendants terminated Plaintiff's employment on or about June 24, 2022.

31.     On or about February 23, 2020, DHP and the Third-Party Defendants modified Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages calculated pursuant to a mutually agreed upon matrix and methodology.

32.     Pursuant to mutually agreed upon material terms between DHP and the Third-Party Defendants and Plaintiff, Plaintiff earned and was entitled to receipt of full and timely payment of commission wages arising from DHP and the Third-Party Defendants' net profit from the PCG New Jersey Contact Tracer Contract ("the New Jersey Contract").

33.     During the year 2020, the revenue generated by the New Jersey Contract amounted to $9,658,996, from which DHP and the Third-Party Defendants were required to pay Plaintiff earned commission wages in the amount of 30% of DHP and the Third-Party Defendants' net profit arising therefrom.

34.     DHP and the Third-Party Defendants' net profit realized from the New Jersey Contract for 2020 is calculated by multiplying the 305,085.2 hours of staffing worked by the $1.44 contract markup to equal a net total profit of at least $439,323.00.  Of DHP and the Third-Party Defendants' net profit amount, Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $131,797.00.

35.     From January 2021 to September 2021, the revenue generated by the New Jersey contract amounted to $38,220,865, from which DHP and the Third-Party Defendants were required to pay Plaintiff earned commission wages in the amount of 30% of DHP and the Third-Party Defendants' net profit arising therefrom.

36.     DHP and the Third-Party Defendants' net profit realized from the New Jersey Contract for January 2021 to September 2021, is calculated by multiplying 1,207,229 hours of staffing worked by the $1.44 contract markup to equal a net profit of at least $1,748,410.  Of DHP and the Third-Party Defendants' profit amount, Plaintiff was entitled to payment of earned commission wages of 30%, equal to at least $521,523.00.

37.     From October 2021 until the conclusion of the contract in August 2022, the revenue generated by the New Jersey Contract amounted to $18,112,611, from which DHP and the Third-Party Defendants were required to pay Plaintiff earned commission wages in the amount of 20% of DHP and the Third-Party Defendants' net profit arising therefrom.

38.     DHP and the Third-Party Defendants' net profit realized from the New Jersey Contract from October 2021, until the conclusion of the contract in August 2022, is calculated by multiplying 572,098 hours of staffing worked multiplied by the $1.44 contract markup to equal a net profit of at least $823,821.00.  Of this net profit amount, Plaintiff was entitled to payment of earned commission wages in the amount of 20%, equal to at least $164,764.00.

39.     Plaintiff earned and was entitled to receive payment of total commission wages arising from DHP and the Third-Party Defendants' net profit arising from the New Jersey Contract for the period 2020 through 2022, in the amount of at least $818,084.00, and likely more factoring in additional net profit earned by DHP and the Third-Party Defendants arising from overtime charged to the contract.

40.     DHP and the Third-Party Defendants paid Plaintiff commission wages in the total amount of $461,698.00 from the New Jersey Contract for the period 2020 through 2022.

41.     DHP and the Third-Party Defendants unlawfully withheld and/or failed to fully and timely pay Plaintiff promised and earned commission wages from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

42.     DHP and the Third-Party Defendants' withholding and/or failure to fully and
        timely pay Plaintiff promised and earned commission wages arising from the New
        Jersey Contract for the period 2020, through 2022, in the amount of at least
        $356,385.00 constitutes a willful and knowing violation of Third-Party
        Defendants' wage payment obligations and Plaintiff's statutory rights under the
        MWPCL.

43.     The MWPCL provides that DHP and the Third-Party Defendants' failure to fully
        and timely pay Plaintiff his promised and earned commission wages arising from
        the New Jersey Contract for the period 2020, through 2022, entitles Plaintiff to
        recovery of three times (3x) Plaintiff's promised and earned commission wages
        (at least $356,385.00 * 3 = $1,069,155.00), plus payment of Plaintiff's attorney's
        fees and costs.

44.     Pursuant to the Maryland Equal Pay for Equal Work Act ("the Maryland Equal
        Pay Act"), Labor & Employment Section 3-304.1(a), "An employer may not (1)
        prohibit an employee from (i) inquiring about [or] discussing [] the wages of the
        employee … or (3) take any adverse employment action against an employee for
        (i) inquiring about the employee's wages …"

45.     Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a),
        "An employer may not … (4) discharge … an employee … because the employee
        (i) makes a complaint to the employer [related to the employee's wages]."

46.     In May 2022, and June 2022, Plaintiff made several pointed and urgent verbal and
        written inquires and complaints to DHP and the Third-Party Defendants regarding
        the past due balance of his earned commission wages from the New Jersey

Contract of the period 2020, through 2022, and the calculation of the same to facilitate DHP and the Third-Party Defendants' payment of the same to Plaintiff.

47. The inquiries and complaints Plaintiff made to DHP and the Third-Party Defendants regarding his commission wages in May 2022, and June 2022, qualified as a statutorily protected activities under the Maryland Equal Pay Act.

48. DHP and the Third-Party Defendants regarded Plaintiff's inquires and complaints regarding the status, calculation, and delinquent payment of his earned commission wages in May 2022, and June 2022, as irritating, insubordinate, and a direct threat to Third-Party Defendants' authority over Plaintiff.

49. As a knowingly unlawful act of willful and malicious retaliation caused and motivated by Plaintiff's statutorily protected inquires and complaints to DHP and the Third-Party Defendants regarding the status, calculation, and delinquent payment of his earned commission wages in May 2022, and June 2022, on or about June 24, 2022, the Third-Party Defendants terminated Plaintiff's employment, causing Plaintiff to suffer lost back and future wages, lost future earning opportunities, and other and resulting economic and emotional damages.

50. DHP and the Third-Party Defendants' termination of Plaintiff's employment on or about June 24, 2022, resulted in the conclusion of Plaintiff's coverage and eligibility to participate in DHP and the Third-Party Defendants' DHP-provided group health care plan insurance coverage.

51.    Upon DHP and the Third-Party Defendants' termination of Plaintiff's employment, DHP and the Third-Party Defendants were required, within fourteen (14) days of termination, to notify Plaintiff of his COBRA rights to continue DHP and the Third-Party Defendants' DHP-provided group health care plan insurance coverage.  *See* 29 U.S.C. § 1166(a)(4).

52.    Notwithstanding DHP and the Third-Party Defendants' statutory obligation, DHP and the Third-Party Defendants failed to provide or otherwise issue Plaintiff his required COBRA notice and has not issued required COBRA notice as of the date of the filing of this Third-Party Complaint.

53.    DHP and the Third-Party Defendants' unlawful failure to timely issue Plaintiff his required COBRA notice constitutes a material violation of Federal law that has caused Plaintiff damages for which Plaintiff is entitled recovery of damages as set forth under the Employment Retirement Income Security Act of 1974 ("ERISA"); 29 U.S.C. § 1132(c).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF MWPCL

54.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

55.    As set forth above, upon the Third-Party Defendants' termination of Plaintiff's employment, and continuing to date, Third-Party Defendants unlawfully withheld and/or failed to fully and timely pay Plaintiff promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

56.     The Third-Party Defendants had and continue to have actual knowledge that Plaintiff was entitled to receipt of full and timely payment of earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00.

57.     The Third-Party Defendants had and continue to have actual knowledge that the Third-Party Defendants' withholding and/or failure to fully and/or timely pay Plaintiff earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, in the amount of at least $356,385.00 is in direct violation of the Third-Party Defendants' wage payment obligations and Plaintiff's wage payment rights under the MWPCL.

58.     The Third-Party Defendants' withholding and/or failure to fully and/or timely pay Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, constitutes a willful and knowing violation of the Third-Party Defendants' wage payment obligations and Plaintiff's statutory rights under the MWPCL.

59.     The Third-Party Defendants' withholding and/or failure to fully and/or timely pay Plaintiff at least $356,385.00 in promised and earned commission wages arising from the New Jersey Contract for the period 2020, through 2022, was and continues to be knowing, willful, intentional, and not the product of a *bona fide* dispute between Plaintiff and the Third-Party Defendants.

WHEREFORE, Plaintiff requests this Court enter judgment in favor of Plaintiff and against the Third-Party Defendants, jointly and severally, in the amount of at least $356,385.00, or such other amount as determined by a finder of fact, statutory liquidated damages equal to an additional two times (2x) the earned commission wages found to be unlawfully withheld and/or not timely or fully paid (a total recovery of 3x Plaintiff's earned commission wages due and owing), plus payment of Plaintiff's attorney's fees and costs.

## COUNT II
## BREACH OF CONTRACT

60.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

61.     In the alternative to Count I, should the Court find that the commissions Plaintiff claims do not constitute wages under the MWPCL, Plaintiff and the Third-Party Defendants mutually agreed to material terms and conditions of a valid and binding contract under which Plaintiff held contractual rights to receive earned commissions and the Third-Party Defendants held a contractual duty to pay Plaintiff commissions arising from the New Jersey Contract for the period 2020, through 2022.

62.     On February 23, 2020, in consideration of the continuation of Plaintiff's working relationship with the Third-Party Defendants, Plaintiff and the Third-Party Defendants mutually agreed to a modification and increase to Plaintiff's compensation plan to an increased annual salary of $125,000, plus additional expressly promised commission wages arising from DHP and the Third-Party Defendants' net profit realized from the New Jersey Contract, calculated pursuant to a mutually agreed upon matrix and methodology.

63.     Pursuant to material terms mutually agreed upon between the Third-Party
Defendants and Plaintiff, Plaintiff fully performed all requisite and/or required
duties such that he earned and was entitled to payment of commissions arising
from DHP and the Third-Party Defendants net profit from the New Jersey
Contract for the period 2020, through 2022.

64.     Pursuant to the material terms mutually agreed upon between the Third-Party
Defendants and Plaintiff, and the same detrimentally relied upon by Plaintiff,
Plaintiff fully performed all requisite and/or required duties such that he earned
and was entitled to payment of commissions arising from DHP and the Third-
Party Defendants realizing net profit from the New Jersey Contract for the period
2020, through 2022, in the amount of at least $818,084.00.

65.     The Third-Party Defendants materially breached their contractual duty to pay
Plaintiff earned commissions arising from the New Jersey Contract for the period
2020, through 2022, in the amount of at least $356,385.00.

66.     The Third-Party Defendants' material breach of their contractual duty to pay
Plaintiff earned commissions arising from the New Jersey Contract for the period
2020, through 2022, caused Plaintiff to suffer damages in the amount of at least
$356,385.00.

WHEREFORE, Plaintiff prays that he be awarded judgment against the Third-Party
Defendants, jointly and severally, for breach of contract in the amount of at least $356,385.00, or
such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of
this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT III
## QUANTUM MERUIT / UNJUST ENRICHMENT

67.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

68.    In the alternative to Count I and Count II, should it be determined that Plaintiff did not hold a right to recover commissions claimed in this action as wages under the MWPCL and a valid and binding contract did not exist between Plaintiff and the Third-Party Defendants related to Plaintiff's rights to commissions arising from the New Jersey Contract for the period 2020, through 2022, Plaintiff performed valuable services for the Third-Party Defendants under circumstances in which Plaintiff and the Third-Party Defendants reasonably expected that the Third-Party Defendants would pay Plaintiff a fair and equitable sum of earned commissions from DHP and the Third-Party Defendants' net profit from the New Jersey Contract for the period 2020, through 2022.

69.    It would be unfair and inequitable for the Third-Party Defendants to receive the value of Plaintiff's valuable services related to the New Jersey Contract for the period 2020, through 2022, without paying Plaintiff full and reasonably expected compensation therefor.

70.    The Third-Party Defendants have been unjustly enriched by and through their failure to pay Plaintiff fair and reasonably expected commissions for Plaintiff's valuable services rendered for the Third-Party Defendants' benefit related to the New Jersey Contract for the period 2020, through 2022.

WHEREFORE, Plaintiff prays that he be awarded judgment as Quantum Meruit and Unjust Enrichment against Third-Party Defendants, jointly and severally, in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT IV
## PROMISSORY ESTOPPEL

71.   Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

72.   On multiple occasions during the period 2020, through about June 2022, the Third-Party Defendants made express and repeated written and oral representations to Plaintiff confirming that Plaintiff would receive commissions calculated pursuant to a mutually agreed upon matrix and methodology arising from DHP and the Third-Party Defendants' net profit from the New Jersey Contract for the period 2020, through 2022.

73.   On multiple occasions during the period 2020, through June 2022, the Third-Party Defendants made express and repeated oral and written representations to Plaintiff confirming the Third-Party Defendants would and intended to pay commissions to Plaintiff calculated pursuant to a mutually agreed upon matrix and methodology arising from DHP and the Third-Party Defendants' net profit from the New Jersey Contract for the period 2020, through 2022.

74.   In making multiple express oral and written promises and representations to Plaintiff during the period 2020, through about June 2022, related to Plaintiff's right and entitlement to commissions arising from the New Jersey Contract for the

period 2020, through 2022, calculated at a mutually agreed upon matrix and methodology, the Third-Party Defendants intended and reasonably expected Plaintiff to remain in the Third-Party Defendants' employ and/or continue his ongoing working relationship with the Third-Party Defendants and for Plaintiff to detrimentally rely on the Third-Party Defendants' promises and representations to perform duties for the Third-Party Defendants' benefit on or related to the New Jersey Contract during the period 2020, through 2022.

75.     In direct detrimental reliance upon the Third-Party Defendants' multiple express oral and written promises and representations to Plaintiff during the period 2020, through about June 2022, related to Plaintiff's right and entitlement to commissions arising from the New Jersey Contract calculated at a mutually agreed upon matrix and methodology, and the Third-Party Defendants' intent to pay the same, Plaintiff was enticed to and did forego pursuit and/or consideration of pursuit of potential alternative employment opportunities, was enticed to and did remain in the Third-Party Defendants' employ, and was enticed to and did perform duties for the Third-Party Defendants' benefit related to the New Jersey Contract during the period 2020, through 2022.

76.     During the period 2020, through June 2022, the Third-Party Defendants had actual knowledge and intent that, notwithstanding their multiple express oral and written promises to Plaintiff confirming his entitlement to and the Third-Party Defendants' intent to pay Plaintiff commissions calculated pursuant to an agreed upon matrix and methodology arising from the net profit of the New Jersey Contract for 2020, through 2022, the Third-Party Defendants had no intention to

pay Plaintiff commissions arising from DHP and the Third-Party Defendants' net profit from the New Jersey Contract in accordance with the matrix and methodology Plaintiff and the Third-Party Defendants mutually agreed to the Third-Party Defendants expressly promised to pay Plaintiff.

77.   During the period 2020, through June 2022, the multiple and repeated express oral and written representations and promises the Third-Party Defendants made to Plaintiff confirming the Third-Party Defendants' intention to pay Plaintiff commissions arising from DHP and the Third-Party Defendants' net profit from the New Jersey Contract for the period 2020, through June 2022, in accordance with the matrix and methodology Plaintiff and the Third-Party Defendants mutually agreed to and that the Third-Party Defendants expressly promised to Plaintiff were actually and/or constructively fraudulent and/or made in bad faith by the Third-Party Defendants at time the Third-Party Defendants communicated the same to Plaintiff.

78.   During the period 2020, through about June 2022, the Third-Party Defendants had actual knowledge that Plaintiff detrimentally relied upon the Third-Party Defendants' multiple false and/or fraudulent express oral and written promises and representations to Plaintiff conforming and/or promising Plaintiff's right and entitlement to commissions arising from the New Jersey Contract for the period 2020, through June 2022, calculated in accordance with the matrix and methodology Plaintiff and the Third-Party Defendants mutually agreed to and that the Third-Party Defendants expressly promised to Plaintiff.

79.     In detrimental reliance upon the Third-Party Defendants' multiple false and/or fraudulent express oral and written promises to Plaintiff regarding Plaintiff's entitlement to commissions arising from DHP and the Third-Party Defendants' net profit from the New Jersey Contract for 2020, through June 2022, and the calculation of the same pursuant to a promised and mutually agreed to methodology and matrix, DHP and the Third-Party Defendants realized net profit from the New Jersey Contract for the period 2020 through June 2022, in the amount of at least $818,084.00, and further increased their profit arising from the New Jersey Contract for the period 2020, through June 2022, by withholding and failing and/or refusing to pay Plaintiff earned and promised commissions in the amount of at least $356,385.00.

80.     The Third-Party Defendants have caused Plaintiff to suffer monetary losses a direct and proximate result of Third-Party Defendants' false and/or fraudulent promises to pay Plaintiff promised and earned commissions in the amount of at least $356,385.00.

WHEREFORE, Plaintiff prays that he be awarded judgment under Plaintiff's Promissory Estoppel Count against the Third-Party Defendants, jointly and severally, in the amount of at least $356,385.00, or such other amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

<u>**COUNT V**</u>
**VIOLATION OF MARYLAND EQUAL PAY ACT – WRONGFUL TERMINATION**

81.   Plaintiff incorporates by reference all preceding paragraphs as if the same were
repeated here verbatim.

82.   Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-
304.1(a), "An employer may not (1) prohibit an employee from (i) inquiring about
[or] discussing [] the wages of the employee … or (3) take any adverse
employment action against an employee for (i) inquiring about the employee's
wages …"

83.   Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-308(a),
"An employer may not … (4) discharge … an employee … because the employee
(i) makes a complaint to the employer [related to the employee's wages]."

84.   Prior to Plaintiff's date of termination, in May 2022, and June 2022, Plaintiff
made several verbal and written inquires and complaints to the Third-Party
Defendants regarding the past due amount of his earned commission wages that
remained due and owing and the proper and mutually agreed upon calculation of
the same to facilitate the Third-Party Defendants' payment of the same.

85.   The inquires and complaints Plaintiff made to the Third-Party Defendants
regarding his commission wages qualified as a statutorily protected activity under
the Maryland Equal Pay Act.

86.   Notwithstanding that Plaintiff's inquires and complaints to the Third-Party
Defendants in May 2022, and June 2022, regarding the status, calculation, and
requested payment of his earned commission qualified as statutorily protected acts
under the Maryland Equal Pay Act, the Third-Party Defendants regarded the same

20

as irritating, insubordinate, and a direct threat to the Third-Party Defendants' authority over Plaintiff.

87.     On or about June 24, 2022, as a knowingly unlawful act of willful and malicious retaliation caused and motivated by Plaintiff presenting statutorily protected inquires and complaints to the Third-Party Defendants in May 2022, and June 2022, regarding the status, calculation, and requested payment of his earned commission wages, the Third-Party Defendants terminated Plaintiff's employment.

88.     The Third-Party Defendants' termination of Plaintiff's employment on or about June 24, 2022, was unlawful insofar it constituted a direct violation of Plaintiff's anti-retaliation protections expressly set forth in the Maryland Equal Pay Act.

89.     As a direct result of the Third-Party Defendants' unlawful termination of Plaintiff's employment, Plaintiff has suffered lost back and future wages, lost future earning opportunities, and other resulting economic and emotional damages.

WHEREFORE, Plaintiff prays that he be awarded judgment under Plaintiff's Maryland Equal Pay Act Wrongful Termination Count against the Third-Party Defendants, jointly and severally, in the amount of $500,000.00, or such other amount as is proven at trial, statutorily provided liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs and expenses of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT VI
## UNLAWFUL FAILURE TO PROVIDE COBRA NOTICE

90.    Plaintiff incorporates by reference all preceding paragraphs as if the same were
       repeated here verbatim.

91.    During the period of Plaintiff's employment, the Third-Party Defendants offered
       and provided Plaintiff with health care coverage by and through DHP's ERISA-
       qualifying group health care plan.

92.    On or about June 24, 2022, the Third-Party Defendants terminated Plaintiff's
       employment, resulting in the termination of Plaintiff's participation and/or
       eligibility to participate in Third-Party Defendants' group health care plan
       coverage by and through DHP's ERISA-qualifying group health care plan.

93.    Following the Third-Party Defendants' termination of Plaintiff's employment,
       Plaintiff made multiple requests to the Third-Party Defendants for issuance of his
       COBRA notice and/or related documents with information pertaining to his rights
       to continue his health insurance coverage.

94.    Upon the Third-Party Defendants' termination of Plaintiff's employment, the
       Third-Party Defendants were required, within fourteen (14) days of termination,
       to notify Plaintiff of his COBRA rights to continue his health insurance coverage.

95.    Notwithstanding Plaintiff's requests for the same and the Third-Party Defendants'
       statutory obligation, the Third-Party Defendants failed to provide or otherwise
       issue Plaintiff required timely COBRA notice.

96.    As of the date of Plaintiff's filing of this Third-Party Complaint, the Third-Party
       Defendants have continued to fail and/or refuse to provide or otherwise issue
       Plaintiff his required COBRA notice.

97.     The Third-Party Defendants' failure to provide Plaintiff with timely COBRA notice, directly and proximately caused Plaintiff to suffer economic and related and/or resulting emotional damages.

98.     The Third-Party Defendants' unlawful failure to provide or otherwise issue Plaintiff his required COBRA was perpetrated by Third-Party Defendants willfully and with actual knowledge of illegality.

WHEREFORE, Plaintiff requests this Court enter judgment in favor of Plaintiff and against the Third-Party Defendants, jointly and severally, in the amount of $110.00 per day the Third-Party Defendants have and continue to unlawfully withhold and/or fail to provide Plaintiff with his required COBRA notice or such other amount as determined by a finder of fact, additional compensatory and related emotional damages in an amount as determined by a finder of fact, plus payment of Plaintiff's attorney's fees and costs.

## COUNT VII

### VIOLATION OF 26 U.S.C § 7434

99.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

100.    Prior to and during Plaintiff's employment relationship with DHP and the Third-Party Defendants, DHP and the Third-Party Defendants conspired to perpetrate a scheme to misclassify Plaintiff and other individuals employed by DHP and the Third-Party Defendants as non-employees and, in so doing, issue Plaintiff and other individuals employed by DHP and the Third-Party Defendants compensation without tax deductions and withholdings and filing or issuing and/or directing or causing 1099 IRS Tax Information Forms to be filed or issued

to or for Plaintiff and DHP and the Third-Party Defendants' other employees, shifting the burden of payment of payroll and related tax obligations to Plaintiff and DHP and the Third-Party Defendants' other employees, saving DHP and the Third-Party Defendants substantial overhead costs to present contract bids below competitors and increase revenue and profits for the benefit of DHP and the Third-Party Defendants.

101. Arising from the foregoing scheme, during the period relevant to this action, the Third-Party Defendants willfully and intentionally filed or issued and/or caused or directed multiple 1099 IRS Tax Information Forms to be filed or issued for or to Plaintiff when the Third-Party Defendants had actual knowledge doing so was false, fraudulent, and unlawful, and the Third-Party Defendants should have filed or issued and/or caused or directed IRS Tax Information Form W-2s to be filed or issued for or to Plaintiff for each calendar year Plaintiff was employed by the Third-Party Defendants.

102. Further, for the calendar year 2022, DHP and the Third-Party Defendants caused and/or directed SP to issue and/or file for or to Plaintiff two (2) IRS Tax Information Forms, the first an IRS Tax Information Form 1099-MISC, identifying SP as paying "Rents" to Plaintiff in the amount of One Hundred Eighty-Seven Thousand Four Hundred Ninety-Six Dollars and Zero Cents ($187,496.00), and the second an IRS Tax Information Form 1099-NEC, identifying SP as paying "Nonemployee Compensation" to Plaintiff in the amount of One Hundred Eighty-Seven Thousand Four Hundred Ninety-Six Dollars and Zero Cents ($187,496.00).

103.   Both 2022 IRS Tax Information Forms DHP and the Third-Party Defendants
caused and/or directed SP to issue and/or file for or to Plaintiff are facially
incorrect and have no relationship to Plaintiff's gross wages earned while
employed by DHP and the Third-Party Defendants during the 2022 calendar year,
insofar as all income earned by Plaintiff from DHP and the Third-Party
Defendants in the 2022 calendar year was in the form of wages earned in the
context of an employee/employer relationship and no compensation and/or other
income earned by Plaintiff from DHP and the Third-Party Defendants was in the
form of "Rents" or "Nonemployee Compensation."

104.   26 U.S.C. § 7434 provides that "[i]f any person willfully files a fraudulent
information return with respect to payments purported to be made to any other
person, such other person may bring a civil action for damages against the person
so filing such return."

105.   To state a claim for relief under 26 U.S.C. § 7434, Plaintiff must allege facts to
prove (1) that the Third-Party Defendants issued or filed an information return;
(2) that the information return was fraudulent; and (3) that the Third-Party
Defendants willfully issued or filed a fraudulent information return.

106.   Plaintiff satisfies the first element of this claim because the Third-Party
Defendants caused and/or directed SP to issue and/or file one or more 1099 IRS
Tax Information Forms each year while Plaintiff was in the Third-Party
Defendants' employ.

107.   Issuing or filing an IRS 1099 Tax Information Form constitutes issuing an
information return.

108.  As to the second and third elements, the Third-Party Defendants had actual knowledge and knew the Third-Party Defendants misrepresented and misreported Plaintiff's wages and/or employment earnings on the 1099 IRS Tax Information Form(s) the Third-Party Defendants caused and/or directed to issue and/or file each calendar year of his employment.

109.  Further, because Third-Party Defendants had actual knowledge that Plaintiff was an employee and the Third-Party Defendants were required to pay their employer share of tax withholdings and wished to avoid the costs associated with this obligations and conspired to misclassify Plaintiff as a non-employee and misidentify Plaintiff's wages as "Rents" or "Nonemployee Compensation" as part of a cost-saving scheme to fraudulently and unlawfully realize additional profits and gain an unfair competitive advantage, the Third-Party Defendants had actual knowledge that it should have and was required to report Plaintiff's compensation received as a part of his employee/employer relationship with the Third-Party Defendants as "wages" earned in the context of an employee/employer relationship for each calendar year on IRS Tax Information Form W2s.

110.  At all times relevant to this action, the Third-Party Defendants had actual knowledge the Third-Defendants caused and/or directed 1099 IRS Tax Information Forms to be issued and/or filed to or for Plaintiff was false, fraudulent, and unlawful and that classifying and/or representing the employment wages the Third-Party Defendants paid to Plaintiff as "Rents" or "Nonemployee Compensation" was untruthful and had no relationship to the wages the Third-

Party Defendants filed or issued and/or caused to be filed or issued to or for Plaintiff in the context of their ongoing employee/employer relationship.

111.    In each tax year during the period of Plaintiff's employment, the Third-Party Defendants knowingly and intentionally filed or issued and/or caused to be filed or issued incorrect IRS Tax Information Forms to Plaintiff.

112.    Arising from each tax year during the period of Plaintiff's employment, the Third-Party Defendants should have filed or issued and/or directed or caused correct IRS Form W-2 tax forms to be filed or issued to or for Plaintiff with the correct wages noted and calculated and the correct withholdings noted, calculated, and withheld and not 1099 IRS Tax Information Forms materially misrepresenting the context and/or source of the income earned by Plaintiff and/or paid or not paid by the Third-Party Defendants to Plaintiff.

113.    The Third-Party Defendants acted willfully and fraudulently to purposely file or issue and/or direct or cause incorrect IRS Tax Information Forms to be filed or issued to or for Plaintiff in each tax year during his employment with the Third-Party Defendants.

114.    The Third-Party Defendants acted willfully to file or issue and/or cause or direct incorrect IRS Tax Information Forms to or for Plaintiff so (1) to avoid paying the employer share of FICA and related employer tax withholdings and shifting this burden to Plaintiff and (2) to reduce overhead and gain an unfair competitive advantage against industry competitors that otherwise adhered to their employer related tax obligations.

WHEREFORE, the Third-Party Defendants are liable, jointly and severally, to Plaintiff in the amount of the greater of his actual damages arising from the Third-Party Defendants' statutory violation or statutory damages amount of $5,000.00 for each fraudulent information return, plus reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## **JURY DEMAND**

Plaintiff requests a trial by jury on all facts, issues, and/or disputes so triable.

Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

__*/s/ Gregg C. Greenberg*_____
Gregg C. Greenberg, Bar No. 17291
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff*