**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

Chambers of
Douglas R. Miller
United States Magistrate Judge

101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

May 15, 2026

**Memorandum to Counsel of Record**

Subject:    D.H. Porter Enterprises, LLC, et. al v. McKinley
            Civil No.: 23-02069-DRM
            Denial of Motion for Sanctions (ECF No. 101);
            Limited Reopening of Discovery on Court's Own Motion

Dear Counsel:

I am in receipt of the parties' submissions on McKinley's[1] Motion for Sanctions ("Motion"), ECF No. 101. *See* ECF No. 105 (Response in Opposition); ECF No. 106 (Reply). McKinley asks the Court to order a third-party IT vendor to conduct a search of the Porter Parties' email systems and servers, a form of relief which he frames as a sanction under Federal Rule of Civil Procedure 37(b) and the inherent authority of the Court.  ECF No. 101 at 1.[2] For the reasons stated below, I find that the imposition of sanctions is unwarranted and will deny the Motion, but I will, *sua sponte*, reopen discovery for the limited purpose of allowing McKinley to address the issues he raises.

**Background and Discovery Misconduct Allegations**

This case arises from a dispute over the calculation of commissions paid to McKinley in connection with a contract (the "PCG Contract") between D.H. Porter and Public Consulting Group ("PCG"). *See* Amended Complaint, ECF No. 5; Amended Counterclaim, ECF No. 21; Amended Third Party Complaint, ECF No. 76. McKinley's commissions were to be calculated on a tiered schedule, based on a percentage of "Net Profit Margin" from performance of the PCG Contract. ECF No. 101-1 at 1.

---

[1] In this Memorandum, "McKinley" refers to Defendant and Counterclaim / Third-Party Plaintiff Marcellus McKinley. "D.H. Porter" refers to Plaintiff and Counterclaim Defendant D.H. Porter Enterprises, LLC. "The Porter Parties" refers collectively to D.H. Porter and Third-Party Defendants Staffing Plus Unlimited, Inc., Hope Porter, and David Porter.

[2] McKinley also seeks attorney fees and costs. ECF No. 101 at 19.  He originally asked the Court to dismiss D.H. Porter's complaint against him with prejudice and to issue an order of default in favor of him and against the Porter Parties on his counterclaim and third-party complaint. ECF No. 101 at 18-19. However, McKinley appears to have abandoned that request in his Reply, opting instead to ask that the Court warn the Porter Parties regarding the possibility of dismissal. ECF No. 106 at 15.

The impetus for this Motion is McKinley's receipt of documents in a third-party production from D.H Porter's accounting firm, J. Marshall & Associates ("J. Marshall"). Based on these documents, McKinley contends that the Porter Parties willfully failed to produce three categories of materials relevant to the calculation of Net Profit Margin, and therefore to the amount of commissions due to him. *See generally* ECF No. 101.

First, McKinley alleges that the Porter Parties failed to produce emails, spreadsheets, and other documents from May through August 2020, related to the bidding and execution of the PCG Contract. *Id*. at 5-8.

Second, McKinley alleges that the Porter Parties failed to produce an April 22, 2021 email with subject line "Marc Commission Calculation 2021" and an attached spreadsheet titled "PCG Contract – Marc McKinley Detail Commission pay date 042121," which McKinley contends is materially different from previously produced versions of this spreadsheet. *Id*. at 8-9.

Finally, McKinley alleges that his review of the Porter Parties' partnership tax returns (Form 1065) indicates that certain financial statements and accounting records which the Porter Parties have previously represented do not exist, must in fact exist. *Id.* at 9-10.

McKinley contends that these documents are responsive to previously served discovery requests[3], and orders of the Court. Specifically, McKinley points to the Court's April 28, 2024 and January 8, 2025 discovery orders, and the Court's June 23, 2025 Letter Order. ECF Nos. 42, 60, and 87.

On November 1, 2025, McKinley raised these issues in a "good-faith letter" to the Porter Parties. He proposed that the parties split the cost of a third-party forensic vendor to search the Porter Parties' computer systems. ECF No. 101-17. On November 5, 2025, the Porter Parties responded with an email attaching a supplemental production of 105 pages of documents, which McKinley contends failed to include multiple categories of documents raised in the good-faith letter. ECF No. 101 at 11. The Porter Parties' email stated in part:

> In closely examining those documents to the extent we could in a few hours, almost all those were already produced in other document productions. It looks like about 18 of the 35 documents were not produced earlier but are substantively the same as other documents that have already been produced.

> Some of these look like there were attachments but we do not have those unless they are duplications of documents already produced to you. We have not yet checked if that is the case. To the extent you want those attachments, we will attempt to get those. Please identify which of those you want us to seek.

ECF No. 101 at 11; ECF No. 105 at 13.

---

[3] Specifically, Interrogatory 10 and Document Requests 20-21. ECF No. 106 at 6-7.

The parties met and conferred by telephone on November 6, 2025. ECF No. 101 at 12. According to McKinley's account of the meeting:

> the Porter Parties' counsel described the Porter Parties' identified discovery withholding as unintentional and inadvertent. As such, the Porter Parties' counsel took the position that the Porter Parties could simply offer a curative further supplemental production and McKinley's suggestion of engaging a third-party IT vendor to locate, identify, and produce responsive relevant electronic records and documents from within the Porter Parties' email systems and internal and external servers was invasive and unnecessary.

ECF No. 101 at 12.

It does not appear that McKinley agreed to the Porter Parties' proposal. The Porter Parties assert that they nonetheless produced an additional 110 pages of text messages on November 10, 2025. ECF No. 105 at 13. McKinley filed the Motion on November 15, 2025.

## Discussion

Under Federal Rule of Civil Procedure 37(b)(2), the Court may impose sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *see Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 520 (D. Md. 2010) (collecting cases imposing sanctions for failing to follow "a wide variety of orders" designed to provide or permit discovery). Therefore, the threshold issue for Rule 37(b) sanctions is whether a party has violated a discovery order.

McKinley argues that the Court's discovery orders "by their wording, spirit, breath, and purpose required the Porter Parties to produce all documents within their possession, custody, or control relevant to calculating the net profit the Porter Parties realized from the PCG Contract and the calculation of McKinley's commission entitlement arising therefrom," ECF No. 101 at 2, and that "[b]y its directives from the bench and through its multiple discovery Orders, this Court has never equivocated from confirming McKinley's clear discovery right to receive the documents and information McKinley needs to calculate the PCG New Jersey Contract's 'net profit,' and McKinley's resulting commission entitlement." ECF No. 106 at 8.

I do not find that McKinley has adequately articulated how the "wording" of the orders to which he cites unambiguously requires the production of the documents at issue, and I am disinclined to impose sanctions for violating the "spirit, breadth, and purpose" of an order, rather than a specific command to produce a particular category of documents.

My own review of the orders reveals the following: ECF No. 87, which I issued, directs the Porter Parties to produce specific categories of documents, but none of them appear to be the categories at issue here.[4]

Judge Quereshi issued ECF Nos. 42 and 60 in an iterative process of guiding the parties toward negotiated resolution of a discovery dispute focused largely on the burden asserted by the Porter Parties in complying with the breadth of McKinley's document requests. ECF No. 42 does not explicitly require the production of any document; it directs the parties to meet and confer on producing a subset of requested documents and, if those discussions were not successful, to submit a status report with specified information.

ECF No. 60 directs the production of two categories of documents, but because this order was issued within an informal discovery dispute resolution procedure, *see* ECF No. 37, these categories are stated generally and with reference to the parties' background knowledge of the discovery dispute:

> Plaintiff shall produce the underlying documents for 2019 and 2020 related to the PCG New Jersey Contract Tracer Contract, that it has already produced for 2021. Additionally, by the same date, Plaintiff shall produce any additional documents related to the PCG Contract which it has previously pledged to produce, including, but not limited to, any relevant profit-loss statements or ledgers that are available.

ECF No. 60 at 1.[5]

It is not possible to discern from this language an unequivocal command to produce any documents within the three categories at issue in McKinley's motion. As such, I do not find a violation of a Court order and thus will not impose Rule 37(b) sanctions.

Moreover, "[b]efore the Court orders any sanction under Rule 37, it must first consider four factors: '(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.'" *Brito v. New Life Healthy Living, LLC*, No. CJC-24-1124, 2025 WL 2638030, at *5 (D. Md. Sept. 9, 2025) (quoting *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001)). Even if one or more of McKinley's categories arguably fell within the "spirit, breadth, [or] purpose" of this language, ECF No. 101 at 2, I would not find that the Porter Parties acted in bad faith by failing to interpret the order in that way, or that they needed to be deterred. Any prejudice to McKinley could

---

[4] One provision of the Order, "Defendants' corporate tax returns for 2020, 2021, and 2022, or the financial statements and work papers used to complete Defendants' returns for these years," ECF No. 87 at 2, might implicate McKinley's third category were the provision not phrased in the disjunctive. However, McKinley does not assert that the Porter Parties failed to produce the tax returns, so the alternative clause is not triggered.

[5] McKinley contends that the dates in this Order should have read "2020, 2021, and 2022," which appears to be correct. ECF 66 at 6 n2.

be mitigated by the reopening of discovery that I am ordering *sua sponte*. Finally, while I am explicitly *not* characterizing the reopening of discovery as a sanction, if imposed as a sanction it would be an effective means of achieving the Court's purpose.

McKinley also invokes the Court's inherent authority to impose sanctions. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). In general, such sanctions—which in this case would amount to an end-run around Rule 37(b)'s requirement of a discovery order violation—are reserved for conduct "utterly inconsistent with the orderly administration of justice or [which] undermines the integrity of the process." *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citation omitted). For the same reasons that I could not find any hypothetical violation of the Court's discovery orders by the Porter Parties to be in bad faith, I find that sanctions based on the Court's inherent powers are not warranted.

## Limited Reopening of Discovery

Despite finding that sanctions are not appropriate, I nonetheless consider seriously McKinley's contention that the J. Marshall production revealed unproduced, yet potentially discoverable documents in the Porter Parties' possession. For that reason, I will *sua sponte* permit a limited reopening of discovery to address these issues.

The following procedure will apply: (1) McKinley must propound requests that identify with specificity the documents or categories of documents McKinley contends have not been produced, limited to the number and categories specified *infra*; (2) the Porter Parties must respond to those requests by producing responsive documents and/or asserting any applicable objections; and (3) any disputes concerning the sufficiency of those responses or the propriety of objections must be addressed in the first instance through my informal discovery dispute resolution procedure. I will docket an order governing that process, which will supersede Judge Quereshi's prior informal discovery order. If that process does not resolve the dispute, the parties may seek leave to file a motion to compel or motion for protective order, as appropriate.

In directing discovery of materials related to bidding of the PCG Contract, I do not reach the merits of the parties' dispute over whether the components of "Net Profit Margin" under McKinley's commission formula, *see* ECF No. 101-1 at 1, were fixed values set at the time of bidding (McKinley's position), or dynamic values to be calculated over the life of the contract performance (the Porter Parties' position). That is an issue more appropriately resolved at summary judgment or trial. I merely find that, at this stage, such materials meet the threshold test for discoverability under Fed. R. Civ. P. 26(b)(1). Rather than engage in protracted analysis as to whether any of McKinley's prior document requests swept in those documents, I conclude that it will be more efficient for McKinley simply to issue a new and unambiguous request for those documents.

I also express no opinion on the merits of McKinley's assertion that the content of the Porter Parties' partnership tax returns (Form 1065) implies certain accounting documents and financial statements *must* exist notwithstanding the Porter Parties' repeated denials. I denied that component of McKinley's April 3, 2025 Motion to Compel, ECF No. 66, as moot because McKinley had later stated he would "rely on the Porter Parties' representations that such documents have either already been produced or that no such documents exist within their custody or control." ECF No. 87 at 2. McKinley now asserts that having seen the partnership tax returns he is no longer confident in relying on those representations. I will permit him to propound new requests and, if the Porter Parties continue to maintain the documents do not exist, they can state as much in their responses. Through the informal discovery dispute resolution procedure, McKinley may then articulate specific reasons why the Court should not believe this denial.

### Conclusion and Order

For the foregoing reasons, the Motion for Sanctions is DENIED.

Discovery is reopened for the limited purpose of permitting McKinley to propound up to six (6) additional requests for production under Fed. R. Civ. P. 34. The requests shall be narrowly tailored to the following categories:

1. Communications and other documents concerning the Porter Parties' bidding and execution of the PCG contract during the period May through August 2020;

2. Documents relating to the April 22, 2021 email with subject line "Marc Commission Calculation 2021" and attached spreadsheet entitled "PCG Contract – Marc McKinley Detail Commission pay date 042121" which was included in the J. Marshall subpoena production; and

3. Accounting documents and financial statements that McKinley contends must exist considering the Porter Parties' partnership tax returns (Form 1065), to the extent such records are relevant to the calculation of "Net Profit Margin" under McKinley's commission formula for the PCG contract.

The following schedule shall apply:

| | |
|---|---|
| McKinley's Requests for Production of Documents | June 5, 2026 |
| Porter Parties' Responses to Requests for Production of Documents | June 26, 2026 |

| Joint Letter setting forth disputed issues, if any, arising from Requests for Production of Documents and Responses thereto[6]<br><br>-or-<br><br>Joint Status Report indicating there are no disputed issues | July 17, 2026 |
|---|---|

Within three (3) days following the resolution of all discovery issues raised in a Joint Letter, or within (3) days following the submission of a Joint Status Report indicating there are no disputed issues, the parties shall contact Judge Simms's chambers to schedule a settlement conference.[7]

Despite the informal nature of this Memorandum, it will constitute a Memorandum Opinion and Order of the Court and should be docketed accordingly.

DATE: May 15, 2026                              Sincerely,

                                               /s/_____
                                               Douglas R. Miller
                                               United States Magistrate Judge

---

[6] Pursuant to my informal discovery dispute resolution procedures, the parties' 3-page letters will be due within 24 hours of this filing.

[7] All other provisions of the Court's March 23, 2026 Order, ECF No. 113, remain in effect.