**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

Chambers of
Douglas R. Miller
United States Magistrate Judge

101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

September 16, 2026

To: Counsel of Record

Subject: *D.H. Porter Enterprises, LLC, et al. v. McKinley*
Civil No. 23-02069-DRM
Discovery Dispute Regarding McKinley's Second Set of Document Requests

**LETTER OPINION & ORDER**

Dear Counsel:

This Letter Opinion and Order addresses the discovery dispute identified in ECF No. 117 and briefed by the parties in ECF Nos. 118 and 119. The dispute centers on "Counterclaim Plaintiff's Second Set of Document Requests to Counterclaim and Third-Party Defendants D.H. Porter Enterprises, LLC, Staffing Plus Unlimited, Inc., David Porter, and Hope Porter" (hereinafter "Second Document Requests"). In response to my Paperless Order, ECF No. 121, McKinley[1] submitted a copy of the Second Document Requests, ECF No. 122, and the Porter Parties submitted an additional filing, ECF No. 127, addressing privilege issues and some productions that they had already made while awaiting a ruling from the Court.

**Background**

In my May 15, 2026 Memorandum Opinion and Order, ECF No. 114, I authorized McKinley to propound up to six additional requests for production of documents, which I indicated must be "narrowly tailored to the following categories":

> 1. Communications and other documents concerning the Porter Parties' bidding and execution of the PCG contract during the period May through August 2020;
>
> 2. Documents relating to the April 22, 2021 email with subject line "Marc Commission Calculation 2021" and attached spreadsheet entitled "PCG

[1] In this opinion, "McKinley" refers to Defendant and Counterclaim / Third-Party Plaintiff Marcellus McKinley. "D.H. Porter" refers to Plaintiff and Counterclaim Defendant D.H. Porter Enterprises, LLC. "The Porter Parties" refers collectively to D.H. Porter and Third-Party Defendants Staffing Plus Unlimited, Inc., Hope Porter, and David Porter.

> Contract – Marc McKinley Detail Commission pay date 042121" which was included in the J. Marshall subpoena production; and
>
> 3. Accounting documents and financial statements that McKinley contends must exist considering the Porter Parties' partnership tax returns (Form 1065), to the extent such records are relevant to the calculation of "Net Profit Margin" under McKinley's commission formula for the PCG contract.

ECF No. 114 at 6. McKinley accordingly propounded the Second Document Requests, and the Porter Parties objected to some of them.

**The Dispute**

The parties describe the dispute somewhat differently from each other, so I will focus on McKinley's specific request for relief, which seeks, in relevant part:

> an Order compelling the Porter Parties to produce the thirteen email chains identified in the form held by the Porter Parties, including emails not including Mr. Marshall, any attachments to the chains, and any email chain created by the forwarding of an email from which the identified chains.

ECF No. 119 at 3.[2]

Comparing this request for relief to the Second Document Requests, it appears that McKinley is asking me to order production of the emails and attachments described at Request 1 subparts a, b, & d-m, and Request 2, but narrowed to exclude the open-ended formulation calling for documents "discussed by, or referenced to in (either explicitly or implicitly), any email . . . ," which appears in each subpart. *See, e.g.*, ECF No. 122 at 3, item 1(a)(ii).

The Porter Parties argue that the Second Document Requests amount to "over 60 document requests, counting subparts," rather than the six that I authorized. ECF No. 118 at 1. They further complain that the requests are overbroad (i.e. not limited to the three categories I authorized); and that they are unduly burdensome because the requests will both "require the Porter Parties to search

---

[2] The request for relief also states that "this Court should Order the Porter Parties to produce the email chain titled 'Revised Numbers for PCG Contract' and the attached spreadsheet ['Checking the Math – 3.xlsx'], which the Porter Parties have baselessly claimed as privileged." ECF No. 119 at 3. This issue appears subsequently to have been resolved. *See* ECF No. 127 at 6 (showing these two items as already produced). The Porter Parties have otherwise requested to defer raising privilege objections until the Court rules on the instant dispute, thereby clarifying the scope of what they must produce.

everything possessed or in their control" and encompass documents that have already been produced. *Id*. at 2.[3]

**Number of Requests**

I do not find that the Second Document Requests exceed the numerical limitation I imposed in ECF No. 114. Request 1 begins:

> All emails, correspondence, memoranda, spreadsheets, or other documents and communications sent, received, created, or modified between May 1, 2020, and August 31, 2020, relating to the bidding on, and execution of, the Public Consulting Group ("PCG") contract by the Porter Parties. *The documents responsive to this request include, but are not limited to*: . . .

ECF No. 122 at 3 (emphasis added). Similarly, Request 2 begins: "All documents relating to the April 22, 2021, email titled 'Marc Commission Calculation 2021' that included Conrad [Austin] and James Marshall. *Including, but not limited to*:" ECF No. 122 at 9 (emphasis added.)

In other words, each Request states a single request for "all" items falling within the stated subject, and then enumerates a non-exhaustive list of items which McKinley believes will be responsive. McKinley could have ended the Requests prior to the language which I italicized, and then sought relief from the Court if the Porter Parties failed to produce items he believed were within their possession. But given his reasonable belief that the Porter Parties were in possession of at least the emails and attachments at issue (because he had received portions of those email chains in a third-party subpoena production), it was likely more efficient for McKinley to provide the enumerated list of what he expected the Porter Parties to produce. The Porter Parties are of course free to object that any item in McKinley's lists is not responsive to the Requests as McKinley has stated them. They have asserted other objections such as overbreadth and undue burden, and may assert privilege. But providing a list, even a lengthy one, of documents which McKinley believed would be responsive and in the Porter Parties' possession, did not transform these two Requests into dozens.

**Overbreadth & Undue Burden**

Federal Rule of Civil Procedure 37(a)(3)(B)(iv) authorizes me to compel the production of documents requested under Rule 34. However, Rule 34 document requests may seek only materials which are discoverable under Rule 26(b). Fed. R. Civ. P. 34(a). Such materials must therefore be relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

[3] The Porter Parties also contend that Request 3 is improper for a number of reasons. ECF No. 118 at 2-3. However, McKinley does not appear to seek an order compelling production of items responsive to Request 3, *see* ECF No. 119 at 3 (request for relief), and the Porter Parties have subsequently stated that they produced the only document that they identified as relevant to Request 3. ECF No. 127 at 2-3.

The proportionality requirement incorporates an inquiry into "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

I do not find that Requests 1 and 2 are overbroad or impose an undue burden on the Porter Parties simply because there may be many responsive documents or they may need to undertake a thorough search of their records to locate them.

The context here is important. At the core of this litigation is the amount of commissions, if any, due to McKinley under his "PCG Commission Agreement." ECF No. 101-1.[4] The PCG Commission Agreement states that commission will be paid as a tiered percentage of "Net Profit Margin," and that "Net Profit will be a function of the Bill Rate minus Pay Rate/Salary, OH and GA. *These amounts will be set at time of contract bid for purposes of calculation*." *Id.* at 1 (emphasis added.)

McKinley contends that these figures (Pay Rate / Salary, Overhead, and General Administrative expenses) were fixed at the time the PCG Contract was bid by D.H. Porter. *See, e.g.* ECF No. 101 at 4. The Porter Parties contend that, notwithstanding the italicized language, all parties understood that net profit was in practice to be calculated based on actual overhead and general administrative expenses, as incurred by D.H. Porter over the course of performance. *See, e.g.,* ECF No. 105 at 15-16, 23-24.

I do not undertake to resolve that dispute here, but certainly it was reasonable for McKinley to believe that documents relating to the bidding and execution of the PCG contract would be responsive to his original requests for production of documents containing "data," "methodology," "formulas," and other information used to calculate his commissions and bonuses. *See* ECF No. 105-3 at 7-8 (Requests 20 & 21).

Despite this, the Porter Parties essentially pre-judged the outcome of this interpretive dispute, and limited their production to documents addressing the *performance* of the PCG Contract, omitting documents relating to its negotiation and execution. I denied McKinley's motion for sanctions because I did not read any of the Court's prior orders as explicitly commanding the production of the latter categories of documents. *See* ECF No. 114 at 3-5; Fed. R. Civ. P. 37(b)(2)(A). But I *sua sponte* reopened discovery because, among other reasons, I concluded that McKinley was entitled to those documents. *Id.* at 5. The possibility that there would be numerous documents responsive to at least the first category that I authorized ("[c]ommunications and other documents concerning the Porter Parties' bidding and execution of the PCG contract during the period May through August 2020") was certainly evident to me.

I might find that the open-ended nature of the repeated formulation "[a]ll documents attached to, *discussed by, or referenced to in (either explicitly or implicitly)*, any email . . . " (emphasis added) makes Requests 1 and 2 unduly burdensome. However, McKinley has narrowed

[4] The formal title of this document is "Re: Update to Offer Letter dated December 13, 2019 - Additional Compensation." The document is dated "January 24, 2019," but all parties agree that the year is a typographical error and the true date is January 24, 2020.

this scope in his request for relief, seeking only "any attachments to the chains." ECF No. 119 at 3. This is a cabined set of documents and, thus limited, the requests are not unduly burdensome.

The Requests as narrowed are also not facially overbroad relative to the categories I authorized. In the course of locating and producing responsive documents, the Porter Parties are, however, free to object that any particular attachment is not responsive to Request No. 1 (because it is outside the date range or is not "relat[ed] to the bidding on, and execution of, the Public Consulting Group ("PCG") contract by the Porter Parties"); or not responsive to Request No. 2 (because it is not "relat[ed] to the April 22, 2021, email titled 'Marc Commission Calculation 2021' that included Conrad [Austin] and James Marshall.")

The fact that some responsive documents may already have been produced also does not make the requests unduly burdensome. Contrary to the Porter Parties' contention, the requests do not "impose on the Porter Parties the obligation to search all those documents to explain where they were produced already." ECF No. 118 at 2. Rather, the Porter Parties can simply produce the emails and attachments which are called for, and any burden of de-duplicating will fall on McKinley.

**Conclusion and Order**

Accordingly, it is hereby ORDERED that the Porter Parties shall produce the items called for in Request 1 subparts a, b, & d-m, and Request 2 of the Second Document Requests (ECF No. 122), except that the phrase "discussed by, or referenced to in (either explicitly or implicitly), any email" shall be disregarded each time it appears.

To the extent the Porter Parties assert privilege over any document responsive to this Order, the parties shall make a good faith effort to resolve any disputes on their own, after which they may raise such disputes pursuant to my informal discovery dispute resolution procedure. *See* ECF No. 115.

Despite the informal nature of this letter, it will constitute an opinion and order of the Court and will be docketed accordingly.

Sincerely,

/s/
Douglas R. Miller
United States Magistrate Judge